[Civ. No. 22347. First Dist., Div. Two. Jan. 19, 1966.]

FRANKLIN L. SHIFRIN et al., Plaintiffs and Appellants, v. McGUIRE & HESTER CONSTRUCTION COMPANY et al., Defendants and Respondents.

---

Morris M. Grupp and Grupp & Grupp for Plaintiffs and Appellants.

Kane, Owens & Melbye, Cyril Viadro, Richard H. Peterson, Richard A. Raftery, Noel Kelly, Gilbert L. Harrick and Hoge, Fenton, Jones & Appel, for Defendants and Respondents.

TAYLOR, J.—On this appeal by plaintiffs from a judgment entered on a jury verdict in their favor for $1,747 property damages in excess of insurance coverage, the contentions are that the trial court erred by: 1) instructing the jury to subtract from the total damages sustained the amount of $81,633.19 received by plaintiffs from their insurer;

2) excluding certain evidence; 3) allowing the jury to view two other apartment buildings; and 4) rejecting their claim for attorney fees.

As no contentions are raised concerning the sufficiency of the evidence to support the judgment, a brief summary is sufficient. On February 20, 1962, plaintiffs' 17-unit apartment house in Mountain View was severely damaged by a gas fire and explosion, for which defendants, McGuire & Hester Construction Company, Pacific Gas and Electric Company, and the City of Mountain View, admitted responsibility. At the time of the loss, plaintiffs were covered by a standard form fire insurance policy issued by Northern Insurance Company of New York (hereafter referred to as Northern) for a specified maximum coverage of $151,500 for property damage and $11,700 for loss of rental income.

After the fire and explosion, plaintiff, Franklin L. Shifrin, as the agent of all plaintiffs, reviewed the damage with Northern's adjusters. They agreed that the amount of insured loss totaled $81,633.19 (representing $72,955.69 for property damage and $8,677.50 loss of rental income). Plaintiffs received this amount in April 1962 in return for the customary sworn proofs of loss and the execution of subrogation receipts assigning all of their rights against defendants to Northern up to the amount of the insurance paid. On October 9, 1962, in accordance with the subrogation receipts, Northern filed an action in the names of plaintiffs against defendants for the total amount of plaintiffs' losses, allegedly over $156,000.

In October 1963 Northern and defendants agreed on the settlement of the subrogated portion of the action against them for $77,551.53. The release executed by Northern and defendants provided for the withdrawal of Northern only and thus recognized plaintiffs' rights to recover for damages in excess of the insurance coverage.

As all defendants admitted responsibility for the accident, the only issue left to be tried was the difference in value between the loss sustained by plaintiffs and that for which they had been compensated. The basic property damage coverage provided by the policy was the actual cash value of the property, not to exceed the specified maximum coverage or the cost of repairing or replacing the property with material of like kind and quality within a reasonable time after loss. Expressly excluded from the coverage were land values, landscaping, walks not appurtenant to and immediately surrounding the building, and miscellaneous irrelevant items.

Plaintiffs indicated that they were seeking to recover only certain specific items of damage in excess of the amount they had received from Northern. They demanded a total of $18,200, comprised of $16,760 property damage and $1,440 loss of rental income. As the items specified by plaintiffs included some which defendants contended had already been included in the released portion of the claim (claimed loss of market value remaining after the repairs, additional rental loss and repairs in the driveway, courtyard and stucco), the court indicated that the proper procedure was to permit plaintiffs to prove any and all damages sustained, and to permit defendants to show a credit for the amount covered by the release from Northern. After a dispute arose over the effect of a stipulation regarding the amounts included in certain exhibits, the court declared a mistrial as to plaintiffs. When the trial began anew on February 25, 1964, the court permitted a further amendment of the pretrial conference order, to show that defendants might claim any benefits by way of setoff they were legally entitled to receive by virtue of the sworn proofs of loss, the two subrogation receipts, and release from Northern to defendants.

At the trial, the most disputed issue was plaintiffs' proof of the residual loss of market value remaining after the apartment house had been repaired. Plaintiffs contended that this loss resulted from hidden structural damage evidenced by cracks in the stucco and other maintenance problems which did not appear until after the insurance settlement. Defendants asserted that Mr. Shifrin's earlier estimate of $15,000 for the residual loss of market value included in the insurance settlement was accurate, as the stucco cracks were of no consequence and were caused by the same factors as the cracks in the reconstructed part of the building. There was also a dispute between the parties as to whether the cracks in the driveways were the result of the fire and explosion or other factors, and whether the driveways were within the "walkways" exception of the Northern policy.

Plaintiff Shifrin testified that the items not covered by the insurance policy totaled $1,747.16.[1] The jury found that the plaintiffs had sustained total damages of $83,380.19 and, in

---

[1] $590 for landscaping; $92.20 for advertising expenses for rentals; $30 for a sign; $24.96 for recharging of fire extinguishers; $85 for garden equipment; and $925 for wet-stand pipes to provide an internal water supply for firefighting. These pipes were not required in the original building but were required by the City of Mountain View at the time of the repairs.

accordance with the court's instruction, subtracted the $81,633.19 paid by Northern, leaving a net of $1,747. As indicated above, plaintiffs do not challenge either the total amount of damages found nor the jury's resolution of conflicting factual issues.

Plaintiffs' main contention on appeal is that the trial court erred in directing the jury to subtract from the total damages they found plaintiffs sustained, the amount of $81,633.19 plaintiffs received from Northern and also in refusing plaintiffs' instructions 19, 20, 21, 22, 25, 27, 28 and 29 designed to require the jury to consider the itemized insurance payments made by Northern. Plaintiffs argue that defendants' settlement with Northern was a fraud on them because defendants thereby acquired the rights that Northern had against plaintiffs, namely, the right to share in the recovery against defendants to the extent of the payments made pursuant to the Northern policy. Plaintiffs argue that they are entitled to recover the $83,380.19 of the total damages found by the jury, entirely free of subrogation. This contention is unique, and is unsupported by reason or authority.

The policy issued by Northern was the standard form fire insurance policy prescribed by section 2071 of the Insurance Code, which provided, so far as pertinent: "This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company." In the interpretation of a similar standard policy provision, it has been held that to give meaning to the words "all right of recovery," the insurer is entitled to priority out of the funds recovered by the insured from the tortfeasor (*Peterson* v. *Ohio Farmers Ins. Co.* (1963) 175 Ohio St. 34 [191 N.E.2d 157]). The court in *Peterson* ruled that where the policy subrogation provisions and the subrogation assignment to the insurer convey *all right of recovery* against any third party wrongdoer to the extent of the payment by the insurer to the insured, the insurer who has cooperated and assisted in proceedings against the wrongdoer is entitled to first and total indemnification out of the insured's recovery from the wrongdoer. The cases cited by plaintiffs denying the insurer such indemnification are not relevant here as they involved insurers who refused to participate in the action against the third party wrongdoer (*Powers* v. *Calvert Fire Ins. Co.*, 216 S.C. 309 [57 S.E.2d 638, 16 A.L.R.2d 1261]; *Sun Ins. Office* v. *Hohenstein*, 128 Misc. 870 [220 N.Y.S. 386]); or the recovery of the loss

by the owner from a source wholly independent of the wrong-doer (*Anheuser-Busch, Inc.* v. *Starley,* 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198]) ; or the subrogation problems incident to the destruction of personal property subject to a conditional sales contract (*In re Future Manufacturing Cooperative* (D.C. N.D. Cal. 1958) 165 F.Supp. 111).

The *operative language* of the subrogation receipts executed by plaintiffs to Northern ''subrogates, assigns and transfers . . . *all* of the rights, claims, demands and interest'' (italics ours) plaintiffs had against defendants to the extent of the insurance payment. This identical language was held to have conveyed away all of the insured's rights against the tortfeasor under somewhat similar facts in *Steigerwald* v. *Godwin,* 144 Cal.App.2d 591 [301 P.2d 386]. The trial court found that all claims of the defendant general contractor arising out of the fire alleged to have been caused by plaintiff subcontractor had been assigned to the insurers and subsequently settled and compromised by them (*id.* at p. 593). The appellate court approved the trial court's finding, holding that the general contractor had assigned his entire cause of action, including claims for uninsured loss, to his insurers and that it had been extinguished.

Similarly, here, the subrogation receipts executed by plaintiffs by their very terms conveyed *any and all* of their rights against defendants *up to the amount of the insurance payments.* Plaintiffs' argument that the subrogation agreement only transferred their rights to the first $81,633.19 damages recovered on *insured property* is not supported by the *Steigerwald* case. As the court in *Steigerwald* pointed out (at p. 596), even if the subrogation receipt were interpreted to convey only the rights relating to items covered by the insurance, the insured is met with the rule against splitting a cause of action since the insured and subrogated insurers are ''privies'' and the same parties under section 1910 of the Code of Civil Procedure. Under the holding of *Steigerwald,* the subrogation receipts here assigned to Northern the first $81,633.19 of recoverable damages and any attempt to sort out insured and uninsured property becomes irrelevant.

As the subrogation receipts executed by plaintiffs expressly provide that Northern was authorized ''to sue, compromise or settle,'' plaintiffs cannot now contend that the settlement between Northern and defendants did not extinguish Northern's rights. Nor was there any great harm

done to plaintiffs by the subsequent withdrawal of Northern from the action. All defendants had admitted responsibility for the fire and explosion and plaintiffs merely had to show the total damages sustained. Since plaintiffs' proposed instructions 19, 20, 21, 22, 25, 27, 28 and 29 related to their theory that the assignment to Northern conveyed the right to sue and recover from defendants on insured items only and thus to the necessity for an itemization of insurance payments, they were properly refused.

 Plaintiffs next argue that the trial court erred by refusing to admit into evidence their Exhibits 5, 6, 7 and 8.[2] Each of these exhibits was admittedly a hearsay document used by plaintiffs and by Northern[3] in determining the amount of the insurance claims paid. Plaintiffs argue that their rejection constituted prejudicial error as it prevented them from establishing the amount of the itemized payments under the insurance settlement. This contention hinges on plaintiffs' theory that the subrogated insurance settlement only transferred plaintiffs' rights to the first $81,633.19 of damages recovered *on insured property* and is answered by our holding that the settlement conveyed to Northern *all* of plaintiffs' rights of recovery on both insured and uninsured property *up to the amount of the insurance payment,* and that this is what defendants subsequently acquired.

The only issue at the trial was the total damages sustained in excess of the amount paid by the insurer. The record shows that the plaintiffs were allowed to read all the items included in the insureds' statement of loss, although the amounts paid for each item by the insurer were excluded. Thus plaintiffs were permitted to show what items of property damage were not covered by insurance and how much their damages were on these items, along with their damages on all other items. Breaking down the total amount actually paid under the policy item by item could only have served to confuse the jury with irrelevant figures.

---

[2]Exhibit 5 was the statement of loss itemizing the $72,955.69 for repairs paid by Northern. Exhibit 6 was the bid of Mr. Kelley, the general contractor, who, at Northerns request, prepared the bid for repairs that was the basis of the insurance settlement. Exhibit 7 was a group of letters from Kelley to Northern amplifying his bid. Exhibit 8 was a comparison of the Kelley bid with the bid of another general contractor, Coburn, also obtained by Northern.

[3]The record indicates that the mistrial was declared because the plaintiffs complained that they had been misled into introducing Exhibits 5 and 6 at the first trial.

We see no merit in plaintiffs' contention that defendants' acquisition of Northern's right of offset saddled defendants with hearsay admissions against interest which Northern may have made to plaintiffs in arriving at the itemized valuations of the insurance settlement. None of plaintiffs' arguments establish error in the court's rejection of their Exhibits 5, 6, 7 and 8.

Plaintiffs, citing *Wright* v. *Carpenter*, 50 Cal. 556, argue that the trial court erred to their prejudice by allowing the jury to view other apartment houses in the area in that such viewing was contrary to section 610 of the Code of Civil Procedure. Section 610 authorizes a viewing of the property involved in litigation and in the *Wright* case the trial court was affirmed in refusing a request for a viewing of neighboring land to show the effect of swamp and overflow water on the land in litigation. However, we do not regard the *Wright* case as authority for the proposition that the court lacks the inherent authority in all instances to allow the jury to view comparable property to demonstrate a point in controversy. The record shows that the purpose of the viewing was to allow the jury to compare the stucco work on all three buildings which were approximately the same age and had all been built by the same contractor. Apparently the trial judge regarded such evidence as useful in enabling the jury to determine the sharply conflicting issues of structural damage. The question of similarity of conditions is primarily for the trial court and goes to the weight of the evidence (*Kraus* v. *Walt Disney Productions*, 221 Cal.App.2d 736, 740-741 [34 Cal.Rptr. 702]). We hold that under the circumstances of this case, the viewing was demonstrative evidence properly admitted within the sound discretion of the trial court. In any case, plaintiffs themselves first asked the witness Shifrin about cracks in the stucco of other buildings he had constructed in the area, and are, therefore, in no position to question the relevancy of such testimony or the subsequent viewing of the other apartments.

Finally, plaintiffs contend that their attorney is entitled to a fee based on the total amount of $83,380.19, free of subrogation. Plaintiffs' attorney admitted that most of the investigating work had been completed by Northern's attorneys before the assignment of Northern's rights to defendants. Since liability was admitted by defendants, plaintiffs had only to prove their damages in excess of the insurance

coverage and their attorney was to receive one-third of the recovery. The fact that they were able to prove only $1,747 of the $18,200 claimed does not affect the amount of the contingency fee allowable to plaintiffs' counsel.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied February 18, 1966, and appellants' petition for a hearing by the Supreme Court was denied March 16, 1966. Tobriner, J., did not participate therein.