[Civ. No. 40001. Second Dist., Div. Five. Apr. 29, 1974.]

TRAVELERS INDEMNITY COMPANY, Plaintiff and Appellant, v. JAMES C. INGEBRETSEN et al., Defendants and Appellants.

[Civ. No. 40054. Second Dist., Div. Five. Apr. 29, 1974.]

HOUSTON FIRE AND CASUALTY INSURANCE COMPANY, Plaintiff and Respondent, v. J. CLARK CHITTICK et al., Defendants and Appellants.

[Civ. No. 40055. Second Dist., Div. Five. Apr. 29, 1974.]

RICHARD M. TAUBE et al., Plaintiffs and Appellants, v. FEDERAL INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

James C. Ingebretsen, in pro. per., and Litwin & Barouh for Defendants and Appellants in No. 40001 and No. 40054 and for Plaintiffs and Appellants in No. 40055.

Dunne, Shallcross & Kane and Mark C. Kane for Plaintiff and Appellant in No. 40001, for Plaintiff and Respondent in No. 40054 and for Defendant and Respondent in No. 40055.

## OPINION

ASHBY, J.—In August 1956, approximately 100 acres of land in the Portuguese Bend area of the Palos Verdes Peninsula began moving toward the ocean. As a result of this movement many homes which had been built on the land were damaged or destroyed.

Some of the homeowners had insurance which covered at least a portion of their losses. Most did not. Approximately 178 homeowners, including those whose losses were at least partially covered by insurance, filed claims against the County of Los Angeles on the basis that the land movement was triggered by certain construction work by the county. The county in due course denied all the claims and 131 parties brought separate lawsuits against the County of Los Angeles, obtaining judgments against the county for damages in inverse condemnation. The judgments were affirmed by the Supreme Court in *Albers* v. *County of Los Angeles,* 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129].

Those homeowners who were covered by insurance filed claims with their insurers and received payment which in most cases amounted to the full limit of their policies. Each policy contained the standard subrogation clause:[1] "Subrogation. This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company." Contemporaneously with receiving payment the insured homeowners each signed a "subrogation receipt" or "release, acknowledgement of satisfaction, agreement to immediate cancellation and assignment of subrogation."

After making payment on the claims, the insurance companies referred

---

[1]See Insurance Code section 2071. The policies involved in the instant cases had been destroyed by the time of trial, and their contents were proved by secondary evidence. No issue herein hinges upon this fact.

the subrogation recovery to the law firm of Bolton, Groff & Dunne, hereinafter referred to as Groff.[2]

The homeowners, both insured and uninsured, pursued their remedy against the County of Los Angeles and retained the law firm of Lillick, McHose, Roethke & Myers, hereinafter referred to as McHose.

Groff and McHose collaborated in the lawsuit against the County of Los Angeles. The prayer for relief was adequate to include the subrogation interests. Groff and McHose made a common effort in preparing the case and shared certain expenses of the suit.

Out of the 131 separate lawsuits against the County of Los Angeles, 32 involved homeowners who were insured and had received payments on claims from their insurers, including the parties to these consolidated appeals. In the action against the county, Taube received judgment for $49,735.83 (principal of $31,000 plus interest from the date the property became uninhabitable to the date of payment by the county); Chittick received $44,793.75 (principal of $27,882 plus interest); and Ingebretsen received $65,090.05 (principal of $40,175 plus interest).

The insurance companies asserted third party claims against the judgments awarded the homeowners, based upon the subrogation agreements. Upon the filing of complaints by the insurance companies to recover on the subrogation claims, a cross-complaint for declaratory relief was filed by one of the homeowners.[3] Twenty-two separate actions for declaratory and equitable relief resulted which were then consolidated for trial. The three cases now consolidated on appeal before the court were tried as pilot cases since they contained the same issues which are raised by all the other cases. The other 19 cases are now held in trial status awaiting the determination of these appeals.

In the case of *Richard M. Taube* v. *Federal Insurance Company,* hereinafter Taube and Federal, Taube approved Federal's claim for the sum of $16,500 (out of the $19,500 which was paid to Taube in 1957), plus interest on that sum from the date of payment, April 18, 1957, in the additional amount of $9,964.66.[4] The trial court awarded judgment to Federal for the total, $26,464.66.

---

[2]Gene E. Groff, Esq., of that firm represented the subrogated interests of the insurance companies. The firm name subsequently became Groff, Dunne, Shallcross & Kane, and then Dunne, Shallcross & Kane, after the death of Mr. Groff in 1972.

[3]This was *Houston Fire Insurance Co.* v. *Chittick.*

[4]The interest period in each of the three consolidated appeals is from the date of the claim payment by the insurance company to the date of payment to the homeowners by the County of Los Angeles.

In *Houston Fire and Casualty Insurance Company* v. *J. Clark Chittick*, hereinafter Houston and Chittick, the homeowners approved payment to Houston of the sum of $12,000 (of the $15,000 paid to Chittick in 1957), but did not approve payment of interest. The trial court awarded judgment to Houston for the principal sum of $12,000 and $6,613.70 in interest, for a total of $18,613.70.

In *The Travelers Indemnity Company* v. *James C. Ingebretsen* and *Dorothy B. Ingebretsen*, hereinafter Travelers and Ingebretsen, Travelers claimed the sum of $19,500 (of the $21,281.33 paid Ingebretsen in 1957) plus interest of $10,932.50, for a total of $30,432.50, but Ingebretsen would not approve the payment either of principal or interest. The trial court awarded judgment for Travelers for a portion of Travelers' claim, $14,440.28, plus interest of $7,460.77, for a total of $21,910.05.

Taube, Chittick and Ingebretsen appeal from these judgments. Travelers also appeals, contending that it is entitled to judgment on the full $19,500 claim.

Appellants'[5] basic contention is that respondents have no right to recover from the proceeds of the judgment against the County of Los Angeles, the amount of the payments to appellants under the policies of insurance. They attempt to support this assertion with various arguments, none of which has merit.

■ Appellants argue that respondents could not have recovered against the County of Los Angeles on the basis of any right to subrogation obtained from appellants. Relying primarily on *Meyers* v. *Bank of America etc. Assn.*, 11 Cal.2d 92 [77 P.2d 1084],[6] appellants argue that because the recovery against the county was for inverse condemnation and not for negligence or "intentional wrongdoing," the county is an "innocent"

---

[5]The primary issues in this case involve the questions which are common to the homeowners' appeals. Therefore in this opinion "appellants" refers to Ingebretsen, Taube and Chittick, and "respondents" refers to the insurance companies. Travelers' contention on its appeal and other issues which relate solely to Taube and Chittick will be mentioned where appropriate.

[6]In *Meyers* an employer's endorsement was forged on checks by his employee who obtained value for them from a third party. The third party deposited the checks with the defendant bank which collected on the checks from the employer. The employee was bonded and the employer was reimbursed by the bonding company which took an assignment of any cause of action the employer might have. On the basis of that assignment, the bonding company sued the defendant bank. The court held that the bonding company could not recover from the bank because the bank was an innocent party and the bonding company was paid to indemnify the loss caused by the actions of the employee and, therefore, the bonding company had no equities which were superior to those of the bank.

party and that the insurers must prove they have greater "equities" than the county. This is without merit because in *Meyers* another party, the wrongdoing employee, was "the primary cause of the loss" and the bank had only an incidental relation to the loss, whereas here the county was the party primarily responsible for the damage. Here the county's "equities" are inferior to respondents' because, whether negligent or not, the county's actions caused the damage. It is not necessary that the county's liability be based on negligence, as long as there is a causal relationship between the county's act or omission and the loss. (See *Patent Scaffolding Co.* v. *William Simpson Constr. Co.,* 256 Cal.App.2d 506, 511-512 [64 Cal. Rptr. 187]; *Meyer Koulish Co.* v. *Cannon,* 213 Cal.App.2d 419, 424-425 [28 Cal.Rptr. 757].)

In any event none of the cases cited by appellants involved a situation where the action is by the insurer against the insured, who, after having received payments from the insurer, later recovers a judgment against the third party. Here appellants in fact recovered damages from the county, and to the extent of payments made to them by the insurers the recovery obtained by appellants inures to the benefit of the insurance company under the well settled rule that an insurer, after paying the amount of the loss on the property insured, stands in the place of its insured and is subrogated in a like amount to the insured's right of action against any other party responsible for that loss. (*Mode O'Day Corp.* v. *Ringsby Truck Lines,* 100 Cal.App.2d 748, 751 [224 P.2d 368].)

In *Mode O'Day,* plaintiff shipped goods by way of defendant's common carrier. The goods were destroyed in transit. Plaintiff filed a claim under its insurance policy and received $5,856.46 from its insurer. The policy contained a subrogation provision substantially the same as in the case at bench. An action was filed against defendant in the name of the insured plaintiff for damages in the amount of $6,419.58. In resolving the issue of whether plaintiff was seeking double recovery the court stated at page 751: ". . . the insurance policy specifically provided that the insurer should be subrogated to the rights of plaintiff and might sue in the name of its assured. It is clear that any recovery allowed in the present action would inure to the benefit of the insurance company and not to plaintiff."

 Appellants' next argument is that respondents are foreclosed from participating in any funds recovered from the County of Los Angeles because they did not intervene in the lawsuit brought against the county. Respondents were not required to intervene in the lawsuit. Under the assignment, they had the right to pursue their remedy either in their own name or in the name of the appellants. The important point is that appellants brought an action against the County of Los Angeles for the entire

amount of loss. The fact that respondents made payments under the insurance policy to appellants and obtained subrogation agreements is sufficient to establish their right to a corresponding amount from that judgment. The evidence is clear that the attorneys representing the insurance companies worked with the attorneys representing the homeowners in obtaining the judgment against the County of Los Angeles and shared in some expenses. It may well be that the attorneys for the homeowners did not desire formal intervention by the insurance companies in their lawsuit. In light of the cooperation between the two law firms it cannot be said that the insurance companies have waived their rights.

Appellants allege bad faith and unfair dealing by respondent insurance companies. The record does not support this argument, and it would serve no useful purpose to make an extended discussion of it.

█ Appellants argue that the insurance companies should be denied any recovery until appellants are first "made whole" for the damages they suffered. Respondents challenge the assertion that appellants were not "made whole" by the judgments against the county and their insurance payments, and contend that in any event respondents are entitled to a priority out of the judgment against the county. We agree that respondents are entitled to priority.

The subrogation receipt executed by Ingebretsen states:

"SUBROGATION RECEIPT

"RECEIVED OF THE Travelers Indemnity COMPANY the sum of Twenty-one-thousand-two-hundred-eighty-one-and-33/100 Dollars ($21,281.33) in settlement of all claims and demands for loss by Landslide occurring on or about the ——— day of October, 1956 to the property insured in Policy No. DC-4815156 issued by said Company.

"In consideration of and to the extent of said payment the undersigned *hereby assigns and transfers* to the said Company *all rights, claims, demands and interest which the undersigned may have against any party through the occurrence of such loss* and authorizes said Company to sue, compromise or settle in the name of the undersigned or otherwise all such claims and to execute and sign releases and acquittances in the name of the undersigned.

"SIGNED AND DATED AT Palo[s] Verdes, Calif THIS 3rd DAY OF October 1957

"WITNESS:" (Italics added.)

The assignment by appellants of "all rights," "to the extent of" the pay-

ments by the insurance companies entitles the latter to first and total indemnification out of the recovery had against the county.

In *Shifrin v. McGuire & Hester Constr. Co.,* 239 Cal.App.2d 420, 424 [48 Cal.Rptr. 799], the court said: "The policy issued by Northern was the standard form fire insurance policy prescribed by section 2071 of the Insurance Code, which provided, so far as pertinent: 'This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company.' In the interpretation of a similar standard policy provision, it has been held that to give meaning to the words 'all right of recovery,' the insurer is entitled to priority out of the funds recovered by the insured from the tortfeasor (*Peterson v. Ohio Farmers Ins. Co.* (1963) 175 Ohio St. 34 [191 N.E.2d 157]). The court in *Peterson* ruled that where the policy subrogation provisions and the subrogation assignment to the insurer convey *all right of recovery* against any third party wrongdoer to the extent of the payment by the insurer to the insured, the insurer who has cooperated and assisted in proceedings against the wrongdoer is entitled to first and total indemnification out of the insured's recovery from the wrongdoer. . . ." (Italics in original.)

Here the insurers' attorneys assisted the homeowners' attorneys in prosecuting the suit against the county and bore a share of the expenses of that suit pursuant to agreement with the homeowners' attorneys. Under these circumstances, bearing in mind also that subrogation is here based upon the insured's written agreement assigning "all rights, claims, demands and interest which the undersigned may have against any party . . ." the insurer should be entitled to subrogation without regard to whether the insured has first been "made whole." (*Ervin v. Garner* (1971) 25 Ohio St.2d 231 [54 Ohio Ops.2d 361, 267 N.E.2d 769, 772-773]; *Morgan v. General Insurance Company of America* (Fla.App. 1965) 181 So.2d 175, 178.)[7]

■ Appellants also allege that the insurance companies are precluded from any recovery because it is impossible to tell what portion of appellants' judgments against the county is for the same property damage paid

[7]The authorities relied upon by appellants are not persuasive. In *Sun Ins. Office v. Hohenstein* (1927) 128 Misc. 870 [220 N.Y.S. 386], the insurer did nothing to aid or participate in the action against the tortfeasor, and the case was specifically rejected for this reason in *Shifrin.* (239 Cal.App.2d at p. 424.) Appellants also cite 16 Couch on Insurance (2d. ed.) section 61:61, page 276, but we find the principle stated there to be inapplicable to this case. *Washtenaw Mut. Fire Ins. Co. v. Budd* (1919) 208 Mich. 483 [175 N.W. 231]; *Shawnee Fire Ins. Co. v. Cosgrove* (1911) 85 Kan. 296 [116 P. 819]; *Newcomb v. Cincinnati Ins. Co.* (1872) 22 Ohio St. 382; and *Aetna Ins. Co. v. Confer* (1893) 158 Pa. 598 [28 A. 153], cited therein,

for by the insurers. The argument runs like this: The recovery against the county was for "loss in market value of [appellants'] realty before and after the land movement." The insurance policy covered only the improvements on the land and not the land itself. Thus a portion of the recovery against the county is for noninsured losses, and the insurers should be denied any recovery unless they can prove what portion of the county judgment is attributable to insured property.

Under the reasoning of the *Shifrin* case, *supra,* the insurers are not limited to the portion of the judgment attributable to insured losses. The court stated (239 Cal.App.2d at p. 425): "The operative language of the subrogation receipts executed by plaintiffs to Northern 'subrogates, assigns and transfers . . . all of the rights, claims, demands and interest' . . . plaintiffs had against defendants to the extent of the insurance payment. This identical language was held to have conveyed away all of the insured's rights against the tortfeasor under somewhat similar facts in *Steigerwald* v. *Godwin,* 144 Cal.App.2d 591 [301 P.2d 386]. The trial court found that all claims of the defendant general contractor arising out of the fire alleged to have been caused by plaintiff subcontractor had been assigned to the insurers and subsequently settled and compromised by them (*id.* at p. 593). The appellate court approved the trial court's finding, holding that the general contractor had assigned his entire cause of action, *including claims for uninsured loss,* to his insurers and that it had been extinguished.

"Similarly, here, the subrogation receipts executed by plaintiffs by their very terms conveyed any and all of their rights against defendants up to the amount of the insurance payments. Plaintiffs' argument that the subrogation agreement only transferred their rights to the first $81,633.19 damages recovered on insured property is not supported by the *Steigerwald* case. As the court in *Steigerwald* pointed out (at p. 596), even if the subrogation receipt were interpreted to convey only the rights relating to items covered by the insurance, the insured is met with the rule against splitting a cause of action since the insured and subrogated insurers are

are all cases where the insurer gave no assistance to the insured in the litigation against the third party and therefore should be distinguished. (*E.g., Western Fire Insurance Company* v. *Phelan* (1956) 179 Kan. 327 [295 P.2d 675, 679-681]; *Ervin* v. *Garner* (1971) *supra,* 25 Ohio St.2d 231.) More appropriate to the facts of the instant case is the statement in Couch at section 61:43, page 265, that "If an insurer paying a claim for a loss caused through the negligence of a third person requests that the insured prosecute his claim against the tortfeasor, assists in the prosecution of the claim, and bears its share of the burden of preparing the case for trial, it is entitled, out of the judgment recovered, to the amount which it has paid on account of the loss, notwithstanding the judgment recovered is not, according to the insured's claim, equal to the full value of the property destroyed." (*Pontiac Mut. County Fire & Lightning Ins. Co.* v. *Sheibley* (1917) 279 Ill. 118 [116 N.E. 644].)

'privies' and the same parties under section 1910 of the Code of Civil Procedure. Under the holding of *Steigerwald,* the subrogation receipts here assigned to Northern the first $81,633.19 of recoverable damages and *any attempt to sort out insured and uninsured property becomes irrelevant."* (Original italics deleted, italics added.)[8]

■ This brings us to Travelers' contention that the trial court erred in allowing Travelers to recover from Ingebretsen only $14,440.28 of its claim of $19,500. Some background information is necessary to discuss this contention. Ingebretsen's policy was somewhat different from Taube's and Chittick's. Taube and Chittick received payment from their insurers for both damage to their dwellings and for additional living expenses when they moved out of their homes. Taube received $19,500 from his insurer, $16,500 of which was for damage to structure and appurtenances and $3,000 of which was for living expenses. Chittick received $15,000, of which, as with Taube, $3,000 was for additional living expenses. When the insurers' third party claims were made, the McHose firm took the position that the insurers were not subrogated to the extent of the payments for additional living expenses because such expenses were in no way included in the judgment against the county. Taube's and Chittick's insurers reached agreement with Taube and Chittick, allowing the latter to reduce the subrogation claims by $3,000, and the insurers do not contest the binding nature of this agreement here.

Ingebretsen's insurance policy provided coverage of $19,500 for damage to the dwelling and an additional coverage of $7,500 for damage to contents. Damage to the dwelling exceeded the $19,500 limit. Travelers paid Ingrebetsen $21,281.33 in 1957, which represents $1,781.33 for damage to contents, plus the limit of $19,500 for the dwelling coverage. However, under the policy Ingrebetsen was entitled to allocate the claim for dwelling coverage and did allocate it as follows: cost of removing debris, $2,500; temporary repairs, $609.72; additional living expense and rental value, $1,950; leaving $14,440.28 attributable to replacement cost of the dwelling.

Travelers points out that under *Shifrin* v. *McGuire & Hester Constr.*

---

[8]Even if the insurers would be entitled to subrogation only to the extent that the judgment against the third party represents insured losses, the sounder view is that where, as here, the insured controls the litigation against the third party, the burden of requesting a special finding or verdict, and of proving that the judgment against the third party represents noninsured damages, rests upon the insured. (*Hayward* v. *State Farm Mut. Automobile Ins. Co.* (1942) 212 Minn. 500 [4 N.W.2d 316, 318-319, 140 A.L.R. 1236, 1239-1240]; Annot. (1942) 140 A.L.R. 1241, 1246-1248; 44 Am.Jur.2d, Insurance, § 1844, p. 772.

*Co., supra,* 239 Cal.App.2d 420, 425, holding that under the subrogation receipt the insurer is subrogated to all rights of the insured to the extent of payment by the insurer, without the necessity of attempting to sort out insured and uninsured losses, Travelers would be entitled to the full $21,281.33. Travelers here claims only $19,500, having conceded to Ingebretsen in prior negotiations the $1,781.33 involved in the damage to contents coverage.

However, under the particular circumstances of this case Travelers should be foreclosed from recovering more than $14,440.28 even though it would normally be entitled under *Shifrin* to claim the full amount of its payments to Ingebretsen. The trial court made a finding that Travelers "cannot now make claim" to the $19,500, but can only make claim to $14,440.28. The finding is supported by substantial evidence as follows:

On February 5, 1965, the McHose firm sent a letter to each of its clients against whom third party claims had been made, enclosing a statement of the claim and requesting the client to determine its accuracy. It stated: "A word of caution to those of you who have received insurance payments. Your insurance company is entitled to recover only payments for damage to your house or out buildings, and, in some cases, for temporary repairs. If your records show you received payments on account of damage to personal property or for extra living expenses, and if it appears such payments are included in the amounts stated, please advise us. *We and the attorneys for the insurance companies have endeavored to delete all such payments, but some may remain.*" (Italics added.)

At trial, counsel for Travelers stated: "Mr. McHose took the position that the coverage on dwelling, $19,500, could perhaps be reduced by the additional living expense items, by the debris removal items, by the cost of temporary repairs. *Apparently Mr. Groff went along with him.*" (Italics added.)

Counsel admitted that Mr. Groff, as attorney for the insurance company, had conceded to Ingebretsen at least the $1,781.33 involved in the contents coverage, but argued that Mr. Groff had not conceded the difference between the $14,440.28 and the $19,500.

The trial judge, in announcing his finding, stated: ". . . I am holding that the insurance carrier is entitled to subrogation in the amount of $14,440.28. [¶] I say that because of the arrangement between Mr. Groff and the McHose firm. There is enough indication on the part of the Groff firm representing the carrier that that much of their claim was based upon

the loss of the home property and that the balance covered the items which have been enumerated."

,Travelers admits that at least the item of additional living expenses was conceded to the homeowners and that the item of damage to contents was conceded to Ingebretsen. We cannot say the trial court exceeded its discretion in holding that Ingebretsen should not be treated differently from other homeowners and that Travelers should be limited to recovering only the $14,440.28.

■ Appellants[9] further contend that the trial court erred in awarding respondents interest from the date respondents paid appellants on their insurance claims. Appellants argue that respondents are entitled to interest only from the date the county actually paid to appellants the judgment in inverse condemnation. This is without merit. The judgment against the county included interest from the date the properties became uninhabitable. When respondents paid appellants' claims and the subrogation receipts were executed, respondents became subrogated in a corresponding amount to the insureds' right of action against the county. (*Meyer Koulish Co.* v. *Cannon, supra,* 213 Cal.App.2d 419, 424.) The county paid interest on the judgment and there is no reason why appellants should be permitted to retain the interest on that portion which was assigned to respondents by virtue of the subrogation receipt. As assignees, respondents were entitled to the interest. (See *Marx* v. *Raley & Co.,* 6 Cal.App. 479, 481-482 [92 P. 519].) There is no unjust enrichment in permitting respondents to have the interest from the date respondents paid appellants and obtained the subrogation receipts.

In appellants' discussion concerning unjust enrichment, there is an implication that there is no advantage in having insurance since the uninsured homeowners received exactly the same amounts and protection as those with insurance. We cannot agree with this implication, and the reason is this: The uninsured homeowners received no funds until 1965 when judgment against the County of Los Angeles was obtained. The insured homeowners received up to the full face value of their policies in 1957. Honoring the right of the respondents under either subrogation or assignment to recover the amounts paid to appellants under their policies and the interest assessed against the County of Los Angeles on that portion of the judgments obviously does not eliminate the benefit to appellants in having been insured.

Other issues have been raised which apply only to Chittick and Taube

[9]See footnote 5, *supra.*

since they approved settlement and division of the proceeds of the judgment against the County of Los Angeles. We find no evidence that the approvals were defective, but we need not consider this question because the foregoing disposition of issues applies equally to all three appellants.

The judgments are affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied May 28, 1974, and the petition of defendants and appellants in Nos. 40001 and 40054 and plaintiff and appellant in No. 40055 for a hearing by the Supreme Court was denied June 26, 1974.