Frank **MURZYN** and Judy Murzyn, Plaintiffs,

v.

**AMOCO CORPORATION** and Metropolitan Life Insurance Company, Defendants.

No. 2:94–CV–188–RL.

United States District Court, N.D. Indiana, Hammond Division.

May 16, 1995.

David W. Holub, William E. Dittrich, Ruman Clements Tobin and Holub, Hammond, IN, for plaintiffs.

Mark D. Boveri, John T. Mulvihill, Sr., Barnes and Thornburg, South Bend, IN, for defendants.

### *ORDER*

LOZANO, District Judge.

This matter is before the Court on the Motion for Summary Judgment filed by De-

fendants, Amoco Corporation and Metropolitan Life Insurance Company, on March 17, 1995, the Motion for Summary Judgment filed by Plaintiffs, Frank and Judy Murzyn, on March 17, 1995, and the Motion to Strike Jury Demand filed by Defendants on September 21, 1994. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART;** Plaintiffs' Motion for Summary Judgment is **GRANTED;** and, Defendants' Motion to Strike Jury Demand is hereby rendered **MOOT.**

*BACKGROUND*

On or about April 1, 1990, Defendant, Amoco Corporation ("Amoco"), adopted and became trustee of a self-funded employee welfare benefit plan known as the "Amoco Medical Plan and Amoco Affiliates Consolidated Medical Benefit Plan" ("Plan"). (Exh. A to Counterclaim) Metropolitan Life Insurance Company ("Metropolitan") administered this Plan. Under the Plan, employees and eligible dependents of Amoco employees were entitled to certain benefits, including medical expense reimbursement. *Id.* Frank and Judy Murzyn are participants in this Plan. (Counterclaim and Answer to Counterclaim ¶ 4)

On September 2, 1990, Frank Murzyn was operating a vehicle going westbound on U.S. 30 near the intersection of the Route 49 bypass in Valparaiso, Indiana. (Frank Murzyn Aff. ¶¶ 2, 4; Judy Murzyn Aff. ¶¶ 2, 4) A number of passengers, including his wife, Judy, were also in the car. *Id.* On this date, the Murzyn vehicle was negligently struck by a vehicle operated by Tammy Finlon. (Frank Murzyn Aff. ¶ 3; Judy Murzyn Aff. ¶ 3) Frank and Judy Murzyn were seriously injured as a result of this accident and incurred various medical expenses. The Plan paid $39,463.29 to medical providers on behalf of Frank Murzyn and $86,999.81 on behalf of Judy Murzyn. (Ans. to Interrog. No. 8, Exh. A to Defendants' Sum Judg. Mot.) Prior to paying any benefits under the Plan, Defendants required that the Murzyns sign a subrogation agreement. (Complaint ¶ 12 with attached Exh. 1 and Ans. ¶ 12) The subrogation agreement provided that Metropolitan would be given the right to be reimbursed for any benefits paid from "any recovery" of the Murzyns. Frank and Judy Murzyn signed the subrogation agreement, modifying it so that the agreement would be governed by Indiana subrogation law. (Complaint ¶ 13 with attached Exh. 1)

On October 30, 1990, Frank and Judy Murzyn, as well as some of the other passengers, filed suit in the Porter County Superior Court against Tammy Finlon and her mother. (Frank Murzyn Aff. ¶ 9; Judy Murzyn Aff. ¶ 9) The Murzyns sought compensatory damages for their personal injuries, including medical expenses. (Counterclaim and Ans. to Counterclaim ¶ 7) Metropolitan was added as a defendant to the state court action on July 14, 1992, so that its claim for subrogation and future recovery could be adjudicated. (Frank Murzyn Aff. ¶ 14 with attached Exh. D) Metropolitan was later dismissed without prejudice from the state court action based upon a stipulation between Metropolitan and the Murzyns that it would not contest any determination of the state court as to the value of the Murzyns' damages. *Id.* On February 16, 1995, the trial court in the state case, for purposes of determining the pro rata share of the settlement proceeds to be paid to interpleader defendants, concluded that Frank Murzyn's total damages are in the amount of $680,000, and Judy Murzyn's total damages are in the amount of $990,000. (Feb. 16, 1995, Order of Porter Superior Court)

Subsequently, Tammy Finlon and her mother entered into a settlement with the Murzyns whereby Frank and Judy Murzyn each would receive $100,000 for their claims. (Frank Murzyn Aff. ¶¶ 12–13, 15; Judy Murzyn Aff. ¶ 13) In the order detailing distribution of the proceeds to the various Plaintiffs, it does not indicate whether the settlement was intended to reimburse the Murzyns solely for medical expenses or whether it included other damages. (March 4, 1995, Order of Porter Superior Court)

Defendants have demanded that Frank Murzyn reimburse the Plan $39,463.29 from the $100,000 received in the settlement and that Judy Murzyn reimburse the Plan $86,999.81 from her $100,000 settlement. Defendants contend that they are entitled to such

reimbursement according to the Plan. On July 5, 1994, the Murzyns filed this action, seeking a declaratory judgment stating that: (1) Indiana subrogation law applies to this particular case and that Defendants breached a modified subrogation agreement, and (2) the Murzyns are not obligated to reimburse Defendants in any way until they have been fully compensated for their injuries. On September 20, 1994, Amoco filed a counterclaim seeking reimbursement under the Plan.

## DISCUSSION

Both sides have filed motions for summary judgment before this Court. In general, the facts of this case are not in dispute (and those facts that are in dispute are inconsequential). Basically, this matter is one of interpretation; the Court is asked to decide which law applies to the parties' agreements as well as how various terms should be interpreted. Thus, this Court concludes that this matter can be readily disposed of on summary judgment. Accordingly, Defendants' Motion to Strike Jury Demand is **MOOT**.

In Count One of their Complaint, the Murzyns seek a declaratory judgment stating that Indiana subrogation law applies to this case and that Defendants have breached a modified subrogation agreement. The Murzyns argue that they are entitled to this form of relief based upon a subrogation agreement sent by Defendants, which the Murzyns signed and included the following underlined language:

I have fully read and understand the contents of this agreement and I intend to be legally bound by the same, *only to the extent permitted under Indiana law governing the provisions permissible in insurance policies providing for subrogation.*

Defendants claim that they are entitled to summary judgment on this Count as ERISA prevents parties from entering into such an agreement.

It is well-established that state subrogation laws generally are preempted by ERISA. 29 U.S.C. § 1144(a); *FMC Corp. v. Holliday*, 498 U.S. 52, 56, 111 S.Ct. 403, 406–07, 112 L.Ed.2d 356 (1990). There is an exception to this rule for state laws regulat-

ing insurance. 29 U.S.C. § 1144(b)(2)(A). Yet, there is an exception to this exception which forbids states from "deeming" employee benefit plans to be insurance companies. 29 U.S.C. § 1144(b)(2)(B). Therefore, self-funded employees' benefit plans are exempt from state laws regulating insurance. *FMC Corp.*, 498 U.S. at 60, 111 S.Ct. at 408–09; *Reilly v. Blue Cross and Blue Shield United of Wisconsin*, 846 F.2d 416, 425 (7th Cir. 1988).

The Murzyns attempt to circumvent this general preemption notion by arguing that while ERISA preempts state law with respect to self-funded employee benefit plans, it does not foreclose federal common law principles of contract law as it applies to such plans. Thus, according to the Murzyns, parties can contract to apply a specific state's subrogation law. Defendants, however, point out the mediocrity of this approach—if private agreements are sufficient to avoid federal preemption, federal statutes would quickly lose their preemptive power. This Court agrees with Defendants and believes that enforcing such private agreements would undercut the goal of ERISA to establish uniform standards. *See, e.g. Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987) ("The uniformity of decision which the Act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws."); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987) (ERISA preemption designed "so that employers would not have to 'administer their plans differently in each State in which they have employees'"). Accordingly, because the Plan is a self-funded employee benefit plan, Indiana subrogation law does not apply, and Defendants are entitled to judgment as a matter of law on Count One.

In Count Two of the Complaint, the Murzyns seek a declaratory judgment stating that the Murzyns are not obligated to reimburse Defendants in any way until they have been fully compensated for their injuries. Defendant, Amoco, filed a counterclaim, claiming it has a subrogation interest in the

Murzyns' state court settlement proceeds pursuant to a provision in the Plan which states:

> If you or your dependents receive (or are entitled to receive) reimbursements from a third party (other than an organization subject to the plan's coordination of benefits provision) for covered expenses, either as the result of a lawsuit or settlement, or under a contract or insurance policy, the plan or the medical plan claims administrator will have the right to recover any reimbursements from the plan that you have received or are entitled to receive. This right of recovery is limited to the amount you receive (or are entitled to receive) from the third party, and is called the plan's subrogation right. In connection with this subrogation right, you may be required to sign a reimbursement agreement in order to receive a benefit under the plan.
>
> Under the circumstances described above, if the plan reimburses you or directly pays a provider of medical services, the plan or the medical plan claims administrator has the right to recover benefits directly from you or your dependents. In all other cases, the plan or the medical plan claims administrator may proceed directly against the third party from whom you or your dependents are entitled to reimbursement for covered expenses.

Exhibit A to Counterclaim, p. 37. The Murzyns assert in their Motion for Summary Judgment that the above-provision only applies to "covered expenses" and that the state court settlement did not differentiate between the covered expenses and other damages. Thus, because Defendants did not establish a priority to the right to proceeds from a third party, the Murzyns claim that Defendants are not entitled to reimbursement since the Murzyns were not "made whole" by the settlement. Defendants disagree with the Murzyns' position, asserting that there is no federal common law "make whole" rule as applied to ERISA employee benefit plans. Essentially, then, Defendants contend that they had priority to be reimbursed for covered expenses from any recovery which the Murzyns received.

Before addressing the propriety of applying the "make whole" rule to ERISA plans, this Court must first consider the level of review to apply to Defendants' interpretation of the Plan. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." While the current matter involves the interpretation of a subrogation clause rather than a denial of benefits, the *Firestone* principle of review still has applicability to this case. *See Baxter v. Lynn*, 886 F.2d 182, 187 (8th Cir.1989) (applying *Firestone* to a case involving interpretation of a subrogation clause); *Sanders v. Scheideler*, 816 F.Supp. 1338, 1342 (W.D.Wis. 1993). A deferential standard of review is appropriate only when a fiduciary exercises discretionary powers. *Sanders*, 816 F.Supp. at 1342.

To make a determination as to whether the fiduciary was exercising discretionary powers, the Court must look to the terms of the Plan. *Id.* The Seventh Circuit has held that a deferential standard of review applies when a plan gives the fiduciary power "to construe and interpret the plan." *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990); *see also Exbom v. Central States, S.E. and S.W. Areas Health and Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir.1990). However, the Seventh Circuit has concluded that a *de novo* standard should be utilized where the plan only provides "authority to control and manage the operation and administration of the Plan." *Michael Reese Hosp. & Med. Ctr. v. Solo Cup Employee Health Benefit Plan*, 899 F.2d 639, 641 (7th Cir.1990).

In the matter at hand, neither party points to any provision in the Plan which indicates that Defendants have authority to interpret or construe terms of the Plan.[1] Moreover,

---

1. Defendants contend that the Plan provides some measure of discretion to its claims adminis-

after reviewing the Plan, the Court has been unable to locate any such language. Accordingly, as the Amoco/Met Life Plan contains no provision granting its fiduciaries the power to interpret or construe terms of the Plan, this Court employs a *de novo* standard of review. *Firestone,* 489 U.S. at 109, 109 S.Ct. at 953–54; *Michael Reese Hosp.,* 899 F.2d at 641.

■ Under a *de novo* standard of review, the Court must construe the terms of the Plan without deferring to either party's interpretation. *Firestone,* 489 U.S. at 112, 109 S.Ct. at 955. "The first task the court is to determine, as a matter of law, whether the terms at issue are ambiguous, and if they are not, to give effect to their meaning." *Sanders,* 816 F.Supp. at 1344 (quoting *Kroblin Refrigerated Xpress, Inc. v. Pitterich,* 805 F.2d 96, 101–02 (3d Cir.1986)).

■ The Murzyns claim that the meaning of the Plan's subrogation provision is clear— if the Murzyns receive a settlement from a third party which reimburses the Murzyns for their covered expenses, the Plan is entitled to reimbursement for those expenses. Covered expenses are defined by the Plan as follows:

> In general, covered expenses are for services performed or prescribed by a doctor or surgeon in connection with a nonoccupational injury or illness and for maternity and obstetrical care.

Exh. A to Counterclaim, p. 22. In the matter at hand, the settlement of the Murzyns did not differentiate between the Murzyns' various types of damages and indicate whether it was intended to compensate the Murzyns solely for medical damages, pain and suffering, or pro rata for all damages. Clearly, Defendants have a subrogation interest in "covered expenses." The question before this Court, however, is whether Defendants have a subrogation interest in proceeds from a third party settlement when it is unclear whether the settlement compensated the Murzyns for covered or uncovered items. Unfortunately, there is no provision in the Plan regarding priority to proceeds. Defendants, however, seem to interpret the Plan in a manner so that they are the first ones entitled to be reimbursed from any third party proceeds.

■ Given this ambiguity in the Plan, the Court essentially is left with two options. First, as suggested by the Murzyns, the Court could adopt a default priority rule, like the "make whole" doctrine, in which an insurer cannot assert a subrogation right until the insured is fully compensated for his or her injuries. *See, e.g. Sanders,* 816 F.Supp. at 1346–47. It is well-established that federal courts may create federal common law where ERISA is silent. *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954; *Dedeaux,* 481 U.S. at 56, 107 S.Ct. at 1557–58. The propriety of adopting the "make whole" doctrine as an interpretive principle, however, is questionable.

In *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1298 (7th Cir.1993), the Seventh Circuit discussed the pros and cons of adopting the "make whole" doctrine. On a positive note, the Seventh Circuit stated that:

> [T]he "make whole" issue is not about whether insurance subrogation is in general a good thing, as it doubtless is. A "make whole" rule does not enable the insured to gamble on double recovery, as he would be doing without subrogation. The rule comes into play only if without it the operation of the subrogation clause would, by making the insured in effect pay back the policy benefits with money he has received for another loss caused by the injury that gave rise to the policy claim, leave him with an uncompensated injury. That would be the consequence of subrogating Jerome Foods to Mrs. Cutting's tort claim to the extent of the plan's medical benefits; the uncompensated nonmedical costs that she incurred as a result of the accident would be $90,000 greater if subrogation is permitted. One can see

trator and the company's Plan trustees as they are granted authority to make decisions as to whether medical services are 1) medically necessary in terms of generally accepted medical standards, and 2) qualified benefits under the Plan.

(Exhibit 8 Counterclaim, p. 22) However, this language does not indicate that the administrator or trustees are given general authority to construe and interpret provisions of the Plan.

why many state courts have thought that the inclusion of a boilerplate subrogation clause was not intended to have this effect—the effect, practically speaking, of curtailing coverage. To put this differently, rejection of "make whole" makes subrogation a lot like assignment. If insurance contracts required the insured to assign any tort claim he might have to the insurer, the price of the insurance would be lower but *effective* coverage would also be lower. The insured would recover only the policy limits, and not his full damages, even in a case in which a judgment had been secured against the tortfeasor, and collected, for those damages.

However, the Seventh Circuit also discussed the argument against adopting a make-whole rule:

> ... It is true that rejecting make whole would bring subrogation closer to assignment, but that would not necessarily be a bad thing. Assignment, by shifting the insured's tort rights to the insurance company, reduces the price of insurance and thus enables the insured to obtain more coverage, in effect trading an uncertain bundle of tort rights for a larger certain right which is just the sort of trade that people seek through insurance. (The counterargument is that the make whole rule is most likely to apply in a case of catastrophic loss, such as the present, where full insurance is rare.) It can also be argued against the make-whole rule that it is administratively more complex, requiring the medical insurer to calculate the insured's total medical and nonmedical loss, and therefore that it makes insurance (or its equivalent in this case) more expensive to the insured—and makes it more expensive to him for the additional reason that he will have to pay for the additional coverage that the rule in effect provides.

*Id.* Unfortunately, the Seventh Circuit did not make a definitive statement as to its view on the propriety of the "make-whole" doctrine because the Seventh Circuit ultimately rested its decision on the fact that the plan administrator has discretionary powers to interpret the terms of the plan, and the administrator's determination of the subrogation clause was not unreasonable. *Id.* at 1298–99.

However, in *Sanders v. Scheideler*, 816 F.Supp. at 1346, another district court in this Circuit determined that the "make whole" doctrine should be incorporated into federal common law. The district court first pointed out that the make whole doctrine is the majority rule in most states. *Id.* Moreover, the Court reasoned that adoption of this rule as a default priority rule "appears consistent with the congressional mandate to fashion federal common law to facilitate the ERISA scheme." *Id.* at 1347. This decision was affirmed, without opinion, by the Seventh Circuit. *See Sanders v. Scheideler*, 25 F.3d 1053 (7th Cir.1994).

The fact that the Seventh Circuit affirmed the lower court in *Sanders* may suggest that the Seventh Circuit supports adoption of the make whole doctrine in federal common law. However, an argument could just as easily be made that the reason the Seventh Circuit affirmed the decision without opinion is that it is unwilling to state as a general principle that the make whole doctrine should be used as a default priority rule for interpreting ERISA plans. Moreover, it is also troubling that Indiana is not like the majority of jurisdictions in that it specifically does not follow the make whole doctrine. Instead, Indiana subrogation law applies a pro rata scheme when disbursing third party proceeds. *See* Ind.Code § 34–4–33–12.

The other approach which this Court could utilize to resolve this case would be to determine which party should have borne the burden of establishing the allocation of the amount received in the settlement for covered and noncovered expenses. Some courts place this burden on the subrogee as the subrogee is the party asserting an affirmative claim to the proceeds. *See, e.g., Ortiz v. Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 344 (Tex.1980). Other courts place the burden on the party who is in a better position to control the litigation or to present evidence regarding allocation of expenses in the judgment or settlement. *See, e.g., Travelers Indemnity Co. v. Ingebretsen*, 38 Cal.App.3d 858, 113 Cal.Rptr. 679, 686 n. 8 (1974); *see generally* Allan D. Windt, *Insur-*

*ance Claims and Disputes* § 10.06 at 538 n. 54 (2d ed. 1992). If the Court were to adopt this burden approach, it would be more inclined to adopt the latter position. However, this Court is equally troubled as to whether the burden approach is the best manner for dealing with this case.

Applying the burden approach to this case is problematic for a couple of reasons. First, the burden approach automatically presumes the invalidity of the make whole concept. Second, applying the burden approach may be inequitable given the facts of this case. Originally, at the state level, Metropolitan was a defendant in the case, but it was later dismissed pursuant to a stipulation that it would not contest the value of the Murzyns' damages. Presumably, if Metropolitan was concerned about receiving its pro rata share of the settlement, it should have continued to stay in the case. Moreover, the "settlement" in this case does not appear to be a typical sort of settlement at all. Instead, the agreement among the parties (which included individuals besides the Murzyns and the Finlons) seemed to be that the maximum coverage amount of the Finlons' insurance would serve to settle all claims. However, the state court judge would determine how the insurance proceeds would be distributed. The state court judge made lump sum distributions and did not differentiate the specific damages for which each party was being compensated. Therefore, it is questionable as to just how much power the Murzyns had to differentiate between the allocation of amounts received for covered versus noncovered items.

Thus, this Court is left with a difficult question and very little guidance from the Seventh Circuit. Ultimately, the Court must decide who should bear the cost in undefined situations such as this one. On the one hand, it is unquestioned that the Murzyns were not fully compensated for all of their injuries. But, on the other hand, the reality of settlements is that individuals forego certain risks of lawsuits in order to receive some compensation. It can be argued that it is unfair to require insurance companies to pay the total amount for an individual's medical expenses while the insured foregoes some of his recovery in other areas. Perhaps a pro rata approach (such as the one described in the Indiana Code) would be the best answer for dealing with this dilemma. That way both the insured and the insurer would bear some of the burden when full compensation is not achieved. Alas, adopting such an approach may create yet another sticky strand in this web of ERISA confusion. Moreover, utilizing such an approach seems to unwind the express purpose of ERISA—to create uniformity when dealing with employee benefit plans—as each state may adopt its own default priority rules.

Yet, such musings are mere speculation on this Court's part. Should the Seventh Circuit seek to make a more definitive statement as to which interpretive course a district court should follow, it may ultimately change the entire landscape for dealing with such questions. However, as the legal precedent currently stands, the make whole doctrine appears to be the best approach to follow in this case. After all, while the Seventh Circuit has not clearly indicated its position on the make whole doctrine, it has at least contemplated the merits of adopting the make whole doctrine. There is no indication that the Seventh Circuit has even contemplated the other doctrines. Moreover, at least one district court in this Circuit has embraced the make whole doctrine as a legitimate tenet of federal common law. Thus, against this backdrop, the Court concludes that the make whole doctrine should be applied to this matter. Because it is undisputed that the Murzyns were not fully compensated for all of their injuries, they have no obligation to reimburse Defendants for any medical expenses paid on their behalf. Accordingly, they are entitled to judgment as matter of law on Count Two.

*CONCLUSION*

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART,** and Plaintiffs' Motion for Summary Judgment is **GRANTED.** Judgment should be entered in favor of Defendants as to Count One. Judgment should be entered in favor of Plaintiffs as to Count Two and Amoco's counterclaim. This case is **DISMISSED**

with prejudice. The Defendants' Motion to strike jury demand is **MOOT.**