[No. B001378. Second Dist., Div. Four. May 7, 1984.]

GLENDORA COMMUNITY REDEVELOPMENT AGENCY,
Plaintiff and Appellant, v.
JOHN P. DEMETER, JR., et al., Defendants and Respondents.

466

COUNSEL

Allard, Shelton & O'Connor, O'Neill & Huxtable, Francis H. O'Neill, Richard L. Huxtable and Mary L. O'Neill for Plaintiff and Appellant.

Herbert Hafif and Ai Woodward for Defendants and Respondents.

OPINION

RUDOF, J.*—

### STATEMENT OF THE CASE

Glendora Community Redevelopment Agency (appellant) appeals from an order, and judgment entered thereon, awarding costs to respondent property owners pursuant to Code of Civil Procedure section 1268.610 after appellant abandoned proceedings in eminent domain pursuant to Code of Civil Procedure section 1268.510.[1] Respondents were awarded costs in the

---

*Assigned by the Chairperson of the Judicial Council.

[1]Except as otherwise provided, all references are to the Code of Civil Procedure.

amount of $672,996.80, including attorney fees in the amount of $656,028.50. The trial court's award of attorney fees was based, in part, upon consideration of the terms of a contingent fee agreement between respondents and their attorney, Herbert Hafif (Hafif). The sole issue is whether there is substantial evidence to support the amount of attorney fees awarded. We conclude that there is and affirm the order and judgment entered thereon.

FACTS

This is the second appeal by appellant challenging the amount of attorney fees awarded respondents. As a point of reference, the underlying facts of both appeals are quoted in pertinent part from an unpublished decision by this court following the first appeal. (*Glendora Community Redevelopment Agency* v. *Demeter,* 2d Civ. No. 63899.)

"The controversy over the subject property started as early as 1977 when the appellant first asserted a claim. Following extensive negotiations appellant made an offer to purchase the property for $1,300,000. Respondents felt their property was worth six to ten million dollars.

"In the early part of 1979, the respondents consulted . . . (Hafif) in connection with the problem. They discussed the legal representation over a period of months and signed a contingent fee agreement on or about October 12, 1979. The appellant increased its offer to $1,535,000 on November 26, 1980.

"The contingent fee agreement between respondents and Hafif provided that Hafif should be paid 15 percent of all amounts recovered by compromise or by judgment in excess of $1,300,000 if that occurred within one year, or 25 percent of such excess if the recovery was after one year.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"On December 10, 1979, the appellant filed its complaint for condemnation in exercise of its power of eminent domain. In a trial to determine value of the subject property, a jury declared that value to be $3,924,114. That trial ended on December 18, 1980.

"On December 23, 1980, the appellant gave Notice of Partial Abandonment. On January 15, 1981, the respondents filed a Motion to Set Aside the Abandonment and a motion for litigation expenses including reasonable at-

torney fees. (Respondent withdrew the motion to set aside the abandonment after the hearing.)

"On January 27, 1981, respondents filed a Supplemental Memorandum of Litigation Costs and Expenses claiming filing fees, deposition, expert and witness fees, etc. in an amount of $17,477.45 and attorney fees in the amount of $734,395.76 for a total sum of $751,873.21. Hearings on the motions were conducted intermittently over a six-week period and taken under submission by the judge on March 11, 1981."

The provision of the contingent fee agreement relevant to both appeals provides: "In the event that the proceedings of the City of Glendora are abandoned after intervention by the Law Offices of Herbert Hafif, then the above described percentage fee interest shall become equivalent interests in the above described land, over and above the $1,300,000, 15 percent within one year or 25 percent if proceedings take longer than one year."

The trial court awarded litigation expenses and costs to respondents in the amount of $672,996.80. While the trial court did not explain how that amount was fixed, it was apparent the attorney fees awarded were exactly as called for in the contingent fee agreement, that is, 25 percent of the difference between the jury's evaluation and the offer of $1.3 million.

The first appeal (from the trial court's determination of the amount of reasonable attorney fees incurred by respondents) concerned what consideration, if any, was to be given a contingent fee agreement in fixing attorney fees pursuant to sections 1268.610[2] and 1235.140.[3]

---

[2] Section 1268.610 states as follows: "(a) Subject to subdivision (b), the court shall award the defendant his litigation expenses whenever:

"(1) The proceeding is wholly or partly dismissed for any reason; or

"(2) Final judgment in the proceeding is that the plaintiff cannot acquire property it sought to acquire in the proceeding.

"(b) Where there is a partial dismissal or a final judgment that the plaintiff cannot acquire a portion of the property originally sought to be acquired, or a dismissal of one or more plaintiffs pursuant to Section 1260.020, the court shall award the defendant only those litigation expenses, or portion thereof, that would not have been incurred had the property sought to be acquired following the dismissal or judgment been the property originally sought to be acquired.

"(c) Litigation expenses under this section shall be claimed in and by a cost bill to be prepared, served, filed, and taxed as in a civil action. If the proceeding is dismissed upon motion of the plaintiff, the cost bill shall be filed within 30 days after notice of entry of judgment.

[3] Section 1235.140 states as follows: " 'Litigation expenses' includes both of the following:

"(a) All expenses reasonably and necessarily incurred in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings.

"(b) Reasonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were reasonably and necessarily incurred to protect the defendant's interests in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings whether such fees were incurred for services rendered before or after the filing of the complaint."

This court concluded, inter alia, that the trial court did not exercise any discretion in fixing reasonable fees based on the agreement alone, and that other factors should be considered as well. These factors included but were not limited to: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in this locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the circumstances; and (6) the experience, reputation, and ability of the lawyer or lawyers performing the services.

Following the first appeal and upon remand, the trial court reconsidered the evidence presented at the first hearing concerning attorney fees. That evidence included the testimony of appellant's expert witnesses, Messers. Thomas Baggot (Baggot) and Richard Laskin (Laskin), respondents, Mr. Demeter (Demeter) and Mrs. Hiatt (Hiatt), Hafif and Ms. Cripe (Cripe) (Hafif's associate). The following is a brief summary of the testimony of those witnesses.

Baggot testified that on the basis of his review of the files and other documents in possession of appellant's attorneys, all work which was reasonably necessary to the representation of respondents could be done in approximately 30 days, at an average of 6 hours per day, or a total of 180 hours. He asserted that $125 per hour was a reasonable hourly rate, and that because the contract in anticipation of the taking was contingent, a multiplier of two should be applied. Using this multiplier, Baggot concluded that the reasonable value of services would be in the amount of $45,000. He considered the case a relatively simple one since it involved total taking of vacant land.

Laskin, who testified on behalf of appellant, also reviewed the files and other documents in possession of appellant's attorneys. Based on that review, he considered the case to be a fairly routine one; that much of the pursuit of affirmative defenses challenging the right to take was wasted effort in light of the conclusive evidence rule established by section 1245.250; that everything that needed to be done in defense of the case would have been done in 150 hours or less; and, that the highest appropriate hourly rate being charged by experienced condemnation attorneys was $200 per hour. Based on Laskin's analysis, the services rendered by Hafif would be worth $30,000.

The evidence established that neither Hafif nor his associate, Cripe, kept records of the amount of time each spent working on respondent's case.

Cripe, however, testified that she worked at least 16 to 18 weeks on the case, including at least 25 days when she made court appearances. Cripe also testified that appellant's expert witness estimate that the case required only 30 days work was "totally unrealistic."

Hafif testified that he spent at least three full months working on the case. He stated that his acceptance of the case on a contingency fee basis put in jeopardy an office overhead of $1.2 million per year, and, further, that he was personally responsible for at least $60,000 per month. Hafif also testified that it was a difficult decision for him to become personally involved in the case because of the risk of zero return for several months' involvement, and that there was a "tremendous amount of work of a personal nature during the course of the trial." For each case taken by Hafif's law offices, approximately 19 to 20 other cases were turned down. Preclusion of other employment was considered by Hafif as one of the most important factors in determining whether to take a case.

With respect to attorney fees customarily charged for similar legal services, Hafif and Cripe testified that the percentage charged by Hafif's law firm was lower than that which other law firms charge for similar trial work. In that regard, Baggot, appellant's expert witness, testified that his fee in another condemnation case was between 25 percent and one-third over the amount offered by the condemner. Baggot also testified that he did not recall ever taking any condemnation case on a 15 percent contingency basis, and, further, that contingency fees are customary and accepted in condemnation cases.

The evidence concerning Hafif's experience, reputation and ability to defend respondents in the eminent domain proceedings instituted by appellant consisted in substance of the following: That Hafif began practicing law in 1956; that for the past 15 years, Hafif specialized in trial litigation and has handled 3 to 5 condemnation cases, and 200 to 250 civil jury trials; that he is a past-president of the California Trial Lawyer's Association, and has headed the educational program for the entire California Trial Lawyer's Association; and that he has handled major antitrust cases, international bank failures, major cross-action lawsuits, medical malpractice cases, and legal malpractice cases.

Hafif additionally testified that while he is very successful in many fields of law, he did not ". . . claim to be a specialist in any of these specific fields of law." However, he did ". . . claim to be a specialist in the field of litigation and trial law, and . . . not an expert in condemnation law any more than . . . [as] . . . an expert in aviation law or . . . antitrust law."

Respondent, Demeter, testified that he and respondent, Hiatt, desired Hafif's legal services because of his reputation as a successful litigator.

## DISCUSSION

Following remand and further proceedings, the trial court issued a statement of decision. That document indicated that the trial court was awarding attorney fees in accordance with the terms of respondents' contingent fee agreement with Hafif. The trial court specifically stated that such fees were reasonably and necessarily incurred in the condemnation proceedings ultimately abandoned by appellant. The trial court further indicated that such fees were reasonable based upon consideration of the factors this reviewing court directed it to consider upon remand.

■ The threshold question thus raised by this appeal is whether an award of attorney fees, pursuant to section 1268.610, may be made on the basis of the terms of a contingency fee contract where the trial court has also considered other factors necessary to a determination of reasonable attorney fees. We hold in the affirmative, and in so holding, reiterate that the court is not bound by the terms of the agreement. We need not, and we do not hold that a trial court must award attorney fees pursuant to the terms of a contract between the prevailing party and his or her attorney.

This question is a novel one. There are no reported cases which have involved this precise question in the context of condemnation. However, this court's recent decision in *Vella* v. *Hudgins* (1984) 151 Cal.App.3d 515 [198 Cal.Rptr. 725], is instructive.

In *Vella*, the trial court awarded attorney fees to the plaintiff following protracted litigation concerning default on a piece of property subject to a note secured by a second trust deed. On a prior appeal in that case, this court held that plaintiff was entitled to attorney fees pursuant to Civil Code section 1717 because the note secured by the second trust deed contained an attorney fees clause. Plaintiff and her lawyer had executed a contingent fee contract which provided that the attorney was to receive 40 percent of all monies recovered. The trial court awarded the sum of $50,000 as attorney fees. On appeal, the defendant contended that since only approximately $9,870 was recovered by plaintiff, she was only entitled to recover 40 percent of that amount. This court determined that there was sufficient evidence in the record to show that plaintiff and her attorney intended the reference "to money" in the agreement to include *everything* plaintiff won as a result of the litigation. It was concluded, therefore, that the evidence showed that the contract between plaintiff and her attorney "created an obligation on the

part of the client to pay to the attorney 40 percent of the value of all property recovered as a result of the instant litigation." (At p. 519.)

In *Vella,* both parties argued that the trial court was required to award attorney fees in accordance with the terms of the contingency fee contract. The issue, then, was whether, "a trial court must award fees pursuant to the terms of a contract between the prevailing party and his or her attorney," where an award of costs, including attorney fees was limited by Civil Code section 1717 to those costs reasonably and necessarily incurred by the prevailing party. (*Id.,* at p. 520.) This court held that the terms of the parties' contract may be considered by a trial court "along with other factors, but that the terms of the contract do not compel any particular award." (*Id.,* at p. 520.) The factors referred to in *Vella* are the same as those which we directed the trial court to consider in the case at bench upon remand.

It follows from the *Vella* decision that while a trial court, in the exercise of its discretion, is not bound by the terms of an attorney fee contract, it should, nevertheless, consider those terms and even award attorney fees in the same amount as would be called for by the terms thereof so long as other factors also bearing on reasonableness are considered as well.

It is here appropriate to remark that in reaching this conclusion we are not unmindful of the policy argument made by appellant and by amicus (City Attorney of the City of Roseville). They argue with great force that permitting recovery of attorney fees on a contingency basis will discourage public entities from exercising eminent domain powers because of the risk that abandonment of condemnation proceedings might become too costly. We suggest, however, that our holding is not as broad as this concern may assume. While we conclude that a trial court, in the proper exercise of its discretion, should consider the terms of an attorney fee agreement, and may even award attorney fees in the same amount as would be called for by those terms, we rule that the trial court may not do so without considering whether an award in the amount set by the agreement is reasonable in the context of all of the factors which we have set forth. However, we are not equating the contingency fee agreement with reasonable attorney fees.

We now turn to the next question raised by this appeal, i.e., whether there is substantial evidence to support the trial court's determination that an award of attorney fees pursuant to the contingency fee contract was reasonable. On this issue, we are fortunate to have the statement of decision in which the trial court enumerated and discussed at length each of the factors that it was directed by this court to consider in the exercise of its discretion in determining reasonable attorney fees.

■ The rule with respect to attorney fees is that "[t]he amount to be awarded as attorney's fees is left to the sound discretion of the trial court. The trial judge is in the best position to evaluate the services rendered by an attorney in his courtroom; his judgment will not be disturbed on review unless it is clearly wrong. (*Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596, 624 [127 Cal.Rptr. 244, 90 A.L.R.3d 728].)" (*Vella* v. *Hudgins, supra,* 151 Cal.App.3d 515, 522.)

■ With respect to "reasonableness," the trial court relied, in part, upon California Rules of Professional Conduct, rule 2-107, which sets forth guidelines for determining reasonableness of attorney fees.

Rule 2-107, as quoted in the trial court's statement of decision, provides in part: " 'B. . . . Reasonableness shall be determined on the basis of circumstances existing at the time the agreement is entered into except where the parties contemplate that the fee will be affected by later events. Among the factors to be considered, where appropriate, in determining the reasonableness of a fee are the following:

"(1) The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The amount involved and the results obtained;

"(4) The time limitations imposed by the client or by the circumstances;

"(5) The nature and length of the professional relationship with the client;

"(6) The experience, reputation, and ability of the lawyer or lawyers performing the service;

"(7) Whether the fee is fixed or contingent;

"(8) The time and labor required;

"(9) The informed consent of the client to the fee agreement.' "[4]

The trial court, observing that the fee agreement provided a contingency fee in the event of condemnation or abandonment, stated that reasonableness

---

[4]These factors are substantially the same as those we listed on remand.

"must be determined by reference to the circumstances existing at the time the expense is incurred." The court then wrote at length on each of the factors necessary to a determination of reasonableness. We summarize briefly and agree with each point as discussed by the trial court. In substance, we conclude that there was sufficient evidence to substantiate the court's findings on each point.

## I

*The Novelty and Difficulty of the Questions Involved and the Skill Requisite to Perform the Service Properly.*

The court noted that: "[t]he practice of condemnation law is not certified for specialization by the California Bar Association, . . . and is not a field in which the average legal practitioner comes in regular contact." The court indicated that redevelopment law and powers of condemnation present novel and difficult questions and that the knowledge and skill necessary to protect a property owner's interest require extraordinary abilities not possessed by most practicing attorneys without considerable research and preparation.

## II

*The Likelihood That Acceptance of the Particular Employment Will Preclude Other Employment by the Lawyer.*

The court relied upon the testimony of Hafif and of respondent Hiatt. Hiatt stated that he insisted upon Hafif's representation because of his reputation as a successful trial attorney. Hafif testified that he was reluctant to accept the employment because of the preclusion of other business. The court found to be credible Hafif's testimony that he was a busy lawyer and personally engaged in lengthy, complex litigation involving substantial monetary issues. The court also found: "that the belief of Mrs. HIATT that her property was worth more than $1.3 million was a reasonable belief. Her belief that refusal of the offer and the contemplated actions of [appellant] placed her property interests in jeopardy was also reasonable. Under such circumstances, it was reasonable for her to seek the services of an attorney with a reputation, skills and abilities such as those possessed by MR. HAFIF."

## III

*The Amount Involved and the Results Obtained.*

The court noted that respondents' refusal to accept appellant's offer of $1.3 million triggered proceedings which culminated in a jury assessment

that the property was worth $3.9 million. The court also noted that respondent Hiatt's belief that the property was worth much more than $1.3 million was reasonable under all the circumstances existing at the time that the attorney fee contract was executed. The court noted that respondents sought to prevent appellant from taking the property at considerably less than its value and by the attorney agreement sought to convey a "proportionate share of the value of the property which exceeded the offer in an effort to protect the whole." The court concluded that: "[t]he agreement geared the amount involved to the result obtained."

Appellant contends that immediately prior to the valuation trial, Hafif did everything he could to prevent appellant from taking the property. Hafif was unsuccessful in this effort. Also, once the jury returned its verdict of $3.9 million as the value of the property, appellant points out that Hafif was also unsuccessful in compelling appellant to buy the property at that price. The fact that Hafif was "unsuccessful" in his attempts, at different stages, to obtain the results desired at those stages, does not establish as appellant suggests that Hafif was unable to successfully act as a diligent advocate for his clients.

## IV

*The Time Limitation Imposed by the Client or by Circumstances.*

The court noted that there is considerable congestion in the courts in the civil law area, and that condemnations are priority matters, because of the flux in property values and because comparable sales of real property are "of little probative value unless they are current to the date of valuation. Time limitations in [condemnation] proceedings demanded early determination of issues in preparation in close time proximity to the issues addressed."

Appellant acknowledges that all condemnation cases are priority matters but argues that since there was testimony to the effect that the case herein was a simple or routine one, the time limitations imposed under the circumstances was not as pressing as the court found. It is not clear how the fact that the case might have been characterized as a simple or routine one would have made the case any less of a priority matter. Appellant also argues that since Hafif had the services of an associate, Cripe, he was not as pressed for time because Cripe relieved him of the responsibilities of all legal research, preparation of pleadings, attendance in court prior to trial, and taking depositions. Contrary to this observation, there is sufficient evidence to show that Hafif was intimately involved at all stages of the preparation for

trial, and that he also acted in a supervisory capacity at all times over the work Cripe produced on behalf of respondents. Furthermore, we must consider that Hafif bore the ultimate responsibility.

## V

*The Nature and Length of the Professional Relationship.*

The court on this point noted that the professional relationship between respondents and Hafif began early in 1979 and that those services continued to the present.

## VI

*The Experience, Reputation, and Ability of the Lawyer or Lawyers Performing the Services.*

The court noted that Hafif was not a specialist or expert attorney in condemnation. Notwithstanding, the court found that there was substantial evidence to the effect that Hafif was an "exceptionally competent trial attorney who enjoyed a statewide, if not nationwide, reputation for his trial expertise."

Appellants argue that even assuming that Hafif was an exceptionally competent trial attorney as the court determined, the court's award in this case of attorney fees would amount to $3,644 per hour. Appellant contends that there is no indication that even the very best trial attorney available could command such an hourly rate. This argument mixes the proverbial apples and oranges in that appellant seeks to impose an hourly fee upon Hafif's services when in this case, the focus is upon a contingency fee agreement. The two species cannot be compared. That is the gamble of a contingent fee agreement. Had appellant been more accurate in its evaluation, Hafif may not have been entitled to anything for his time or services. Thus, depending on the difference between the offer and the verdict, Hafif may have been entitled to as little as $1 per hour (that is, considering the agreement only). The results are as infinite as are the permutations.

## VII

*Whether the Fee Is Fixed or Contingent.*

The trial court noted and the evidence establishes that contingency fee agreements are accepted in condemnation fields and that in this case the fee

agreement was contingent. The court stated that: "[s]uch arrangements seem particularly advantageous in condemnation cases since it may be the only means by which a landowner without liquid assets may defend his property." The court also noted that: "the fee agreement in this case bears a direct relation to the benefit bestowed upon the client. [Respondents] were faced with proceeding, the culmination of which they could reasonably believe would deprive them of their property for $1.3 million. If, through the successful services of their attorney, they could keep their land and if the property was worth more than $1.3 million, as they suspected, they would benefit." The court observed that on the basis of the evidence with respect to the property involved, that there was no immediate means by which its exact value could be fixed. Consequently, if the offer of $1.3 million was correct, and if appellant decided not to take that property, attorney fees would not be due because the risk of loss was not real, but imagined. The court also observed that: "if the risk of loss was a reality and if services of the attorney were successful in eliminating that risk, [respondents] would compensate the attorney a proportionate share of the benefit to them by the termination of the threat."

The court properly concluded that the contingency fee agreement between respondents and Hafif was reasonable and that the clients believed that the contract was a reasonable one.

## VIII

### The Time and Labor Required.

The court commented that the time and labor factor which was required should not be considered as significant in assessing reasonable fees in this case. The court, however, did consider that time and labor was a factor within the contemplation of respondents and Hafif at the time the agreement was executed. On that basis, the court found that there was credible testimony of Hafif that he spent at least three months of his own time on the case and that Ms. Cripe spent 16 to 18 weeks on the case. This conclusion is amply supported by the record. The court also observed that there was testimony that approximately 10,000 pages of legal and other evidentiary documents were prepared in preparation for trial of the case. The court concluded that: "[s]uch time and labor was a contingency recognized by the parties at the time of the attorney-client agreement, . . ."

## IX

### The Informed Consent of the Client.

The court stated that: "[f]rom the evidence presented, the clients chose the contract, made corrections to their satisfaction, and provided the final

forms concerning fees payable on abandonment. They had appreciation of the significance and effect of the arrangement, believed it then . . . and continue to believe it to be so." This finding by the court is supported by substantial evidence in the record.

X

*Is the Fee Exorbitant or Unconscionable?*

Section 1268.160 provides for award of litigation expenses to property owners in cases of abandonment. Litigation expenses include attorney fees which are reasonably and necessarily incurred in the proceedings in preparing for trial. (§ 1235.140.) In considering whether or not the contingency fee in the instant case was unconscionable or exorbitant, the court concluded that attorney's services "may be unreasonable in the sense that they are not reasonably adapted to the object sought to accomplish [*sic*]. They may be unnecessary if they are not performed for the accomplishment of the purpose." The court recognized that: "[a] fee may be incurred for the accomplishment of a purpose and the service be reasonably and necessarily related to the object and still be unreasonable in amount. Reimbursement under CCP 1235.140 . . . is not provided for fees which are unreasonable in amount. A simple market value test is not the only true measure of reasonableness because lawyering is a state-created monopoly. An attorney owes his client an obligation of fairness in setting fees, whether or not the client would have paid more. [¶] The contention of [appellant] is that the fee sought is more than 12 times the fee for which services at an hourly rate would have been obtained from an attorney specializing in condemnation (including $8,000 for costs on appeal). Such calculations are based upon hindsight rather than reasonable expectation."

■ The court went on to state that: "[a]ny determination of reasonableness must be framed in the context of the circumstances existant at the time of the fee agreement. It was reasonable to assume [appellant's] offer was in good faith and that [appellant] had some reason to believe that just compensation for the property was approximately $1.3 million. If that were in fact true, all the best efforts of the attorney would not benefit the property owner and in that event, . . . the attorney would receive nothing for his services. The unsupported belief of the client and the attorney was that the property was worth considerably more but much investigation and preparation was needed to support that fact and, even then, the vagaries of the subsequent proceedings made the valuation of the property at any greater figure an uncertainty. ■ Twenty-five percent of the value of the property, which exceeded $1.3 million, is not unreasonable under all the circumstances.

Especially so if the services to be performed exceeded one year in duration and included any and all attorney's fees to the conclusion of the case including subsequent appeals. The Court is aware that the use of contingency fee arrangements is widespread in the general field of civil law. Many such contracts provide for percentage fees greater than 25% of the total recovery. Such contracts do not limit fees to a proportionate share of the excess recovery over offer. The Court here is not called upon to condemn or condone such practice but it is a fact which cannot escape notice. Occasionally, the result is a considerable fee. Occasionally, there is no fee at all and no recovery by the client. Sharing the benefits to the client produced by attorney's service is a recognized method of pricing legal fees. It is no less a logical method in the instant case."

We do not adhere to the oft quoted concept that granting seemingly large fees will have a therapeutic effect on first offers by governmental agencies, nor that our decision will have the far reaching effect of discouraging abandonments.

Similarly, we are unimpressed by appellant's concern that the so-called "Hafif/Hiatt Condemnation Clause" will become a standard part of California retainer agreements and condemnation law. Appellant argues that if this occurs, new and needed improvements are likely not to be undertaken because of the risk in finding that the project would actually cost too much, and the agency must withdraw from the project.

Although there may be an added factor of uncertainty to the costs, we believe these arguments amount to a "tempest in a teapot." No one is ever sure of what a trial court in the sound exercise of its discretion will consider reasonable and necessary; nor do we believe that it is desirable to send a signal to the trial courts that after properly weighing the factors, which should include the terms of a contingency agreement, that they then must apply a formula to the result which would then reduce it in proportion to the nature of the case. The establishment of such a formula, we believe, lies in the hands of the Legislature.

The trial court here weighed and considered many factors in determining the reasonable value of Hafif's services. The court was able to observe conduct at the trial and related proceedings and in consideration thereof determined that the contingency fee arrangement, in light of all the other factors, was reasonable. On this record, the trial court did not abuse its discretion.

Judgment and order is affirmed.

Woods, P. J., and McClosky, J., concurred.

A petition for a rehearing was denied May 31, 1984, and appellant's petition for a hearing by the Supreme Court was denied July 26, 1984.