[Civ. No. 69078, No. B002494. Second Dist., Div. Two. July 31, 1985.]

AETNA LIFE AND CASUALTY COMPANY et al.,
Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

---

COUNSEL

Parkinson, Wolf, Lazar & Leo, Parkinson & Wolf, Richard B. Wolf and Michael W. Connally for Plaintiffs and Appellants.

James K. Hahn, Ira Reiner and Gary R. Netzer, City Attorneys, Edward C. Farrell, Chief Assistant City Attorney, Terso R. Rosales and Diana Mahmud, Deputy City Attorneys, for Defendants and Appellants.

## OPINION

**COMPTON, Acting P. J.**—Thirty-eight homeowners, eight insurance companies, and the Great Western Council of the Boy Scouts of America brought the instant suit against the City of Los Angeles and its Department of Water and Power. They prayed for compensation for damages resulting from the Mandeville Canyon Fire of October 1978, which, they alleged, was caused by sparks from defendants' electrical power transmission lines along Mulholland Drive. Plaintiffs pleaded causes of action for negligent maintenance of a dangerous condition of public property and for inverse condemnation.

The trial was bifurcated to permit a determination of liability before introduction of evidence of damages. Pursuant to agreement of the parties the trial court sat as trier of fact on the inverse condemnation issue, while a jury heard the same evidence to determine the question of negligence. After five weeks of trial the trial court rendered judgment for plaintiffs on the inverse condemnation issue. The jury returned a verdict in favor of defendants on the negligence issue. Subsequently, when the defense failed to produce any evidence to contradict plaintiffs' case for damages, the trial court directed a verdict on damages, and dismissed the somewhat bewildered jury. Plaintiffs' motions for a judgment notwithstanding the verdict and for a new trial on the negligence cause of action were granted. The court fixed interest on the damages at the market rate and awarded attorneys fees to plaintiffs. The total judgment was approximately $10.7 million. Defendants have appealed.

The evidence may be summarized as follows.

In 1973, crews employed by defendants strung several strands of aluminum-wrapped steel cable from poles along a stretch of Mulholland Drive in Los Angeles. After being fastened into position on the pole crossarms, the wires were energized with a current of 4,800 volts. During high winds on October 23, 1978, two or three of the wires swung together, arced, and sent sparks of molten burning aluminum into the dry brush across Mulholland Drive. The brush ignited and the resulting fire spread rapidly until it had consumed thousands of acres and invaded residential areas. Heavy rains in the years following caused additional mudslide damage to residences near the denuded slopes.

The defense sought to show that the fire was of suspicious origin, possibly caused by arson, by introducing partially burned matchbooks recovered near the site of the fire's origin. The trial court, however, found that the fire was

caused by the sparks from the arcing power lines constructed and maintained by defendants. The jury's general verdict in favor of defendants does not, however, reveal how the jury viewed these facts.

It appears to us that under the law as developed in property damage cases the doctrine of inverse condemnation has subsumed the principles of negligence and in effect rendered it unnecessary for a property owner who has suffered property damage at the hands of a government agency as a result of the construction or operation of a public improvement to proceed in tort.

Defendants' only contention in this regard is that the extension of the remedy of inverse condemnation to fire damage is unprecedented and undesirable. They point out that most California inverse condemnation cases involve damage not normally covered by insurance, such as flooding, land subsidence, and aircraft overflight. Defendants argue that because fire insurance is readily available and frequently purchased by prudent property owners, such owners should not be permitted to recover in inverse condemnation and more specifically that insurance carriers should not be permitted to subrogate to a property owner's claim for inverse condemnation.

The California Constitution's eminent domain clause[1] makes no exception for fire damage or any other claim covered by insurance. It expresses a deeply rooted public policy to limit the power of the government by requiring full compensation for the taking or damaging of private property.

The doctrine of inverse condemnation has its roots in the principles of tort and property law. (See Van Alstyne, *Inverse Condemnation: Unintended Physical Damage* (1969) 20 Hastings L.J. 431, 438; *McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683, 692 [194 Cal.Rptr. 582].) Proximate causation is an element of both negligence and inverse condemnation. Unlike negligence, however, inverse condemnation does not require any breach of a standard of care, nor foreseeability of the harm. Thus *any* actual physical injury to real property proximately caused by a public improvement as deliberately designed and constructed is compensable under article I, section 19 of the California Constitution whether or not the injury was foreseeable. (*Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 263, 264 [42 Cal.Rptr. 89, 398 P.2d 129]; *McMahan's of Santa Monica v. City of Santa Monica, supra,* 146 Cal.App.3d at p. 693.) It is not necessary that government's liability be based on neg-

---

[1]Article I, section 19 of the California Constitution provides in part: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."

ligence as long as there is a causal relationship between government's act or omission and the loss. (*Travelers Indem. Co.* v. *Ingebretsen* (1974) 38 Cal.App.3d 858, 864 [113 Cal.Rptr. 679].) All that is required is a deliberate act by a public entity which has as its object the direct or indirect accomplishment of the purpose for which the improvement was constructed and which causes a taking or damaging of private property. (*Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276, 285 [289 P.2d 1].)

In the present case the evidence established that the power lines in question were designed to sag 22 inches between poles. As deliberately spaced 26 inches apart on the crossarms, two of the wires sagging 22 inches could be blown into contact with each other by winds blowing at about 42 miles per hour. Clearly, by defendants' own design standards the construction of these power lines carried some risk of arcing in strong winds. Moreover, the sag of the power lines in question exceeded the defendants' 22-inch design guideline by approximately 30 inches. The risk that these lines, sagging 51 inches or more, could come into contact with each other in moderate to high winds is much greater than if they had been tightened to a sag of only 22 inches. The evidence showed that the lines were deliberately constructed at the greater sag and remained that way through routine semiannual maintenance inspections. Thus the design, construction and maintenance of the sagging high voltage cables permitted intercable contact during windy conditions which resulted in a disastrous fire.

Defendants contend that the plaintiff insurance companies should not be permitted to subrogate to their insureds' causes of action for inverse condemnation because the policy behind article I, section 19 of the California Constitution is to save property owners from contributing more than their fair share to a public undertaking and not to compensate insurers who are obligated by commercial contracts to pay for damages incurred by their insureds. Because of the commercial and contractual nature of the insurer-insured relationship, they contend plaintiff insurers are not equitably entitled to subrogation in inverse condemnation.

Defendants' contention that their equities are equal to or greater than that of plaintiff insurers ignores the simple truth that defendants' acts, negligent or not, caused the fire. (Van Alstyne, *Inverse Condemnation: Unintended Physical Damage, supra,* at p. 438.)

Although as defendants point out, the insurers were paid premiums to assume liability, there is, in our opinion, no appeal to equity in requiring a third party, uninvolved in causing the damage, to bear the burden of compensating the injured parties, when the party that caused the damage is

identifiable and available. Defendants' equities are inferior to those of plaintiff insurers because, whether negligent or not, defendants' actions caused the damage. Furthermore, defendants are at least equally capable of spreading the cost of the loss among the larger population by raising rates for delivery of electric power or by passing the cost along to *their* insurer. (See *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 14 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398].) Proximately causing damage, whether or not foreseeable, constitutes a kind of "fault," and thus a more logical basis for liability, than simply undertaking to indemnify against future hazards.

Defendants argue that because the right to compensation for inverse condemnation of property is constitutionally mandated, it is personal to the homeowners and is therefore not assignable to the insurance companies. The authority they cite in support of this contention is unpersuasive. *Broadrick* v. *Oklahoma* (1973) 413 U.S. 601 [37 L.Ed.2d 830, 93 S.Ct. 2908], states the general rule that constitutional rights are personal and may not be asserted vicariously (*Id.* at p. 610 [37 L.Ed.2d at p. 839].) However, the thrust of *Broadrick* is simply that a litigant has no standing to engage the judicial system to strike down laws that violate the constitutional rights of persons not before the tribunal. In the case at bench plaintiff insurers were parties to the action asserting their own right to compensation. Furthermore, recovery in inverse condemnation requires only that plaintiff have an interest in the property which has been taken by the state. (*McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at p. 690.) Insurance companies, as subrogees of the property owners, have such an interest and are entitled to seek compensation for the losses incurred due to the claims of their insureds.

As a practical matter, this holding also avoids the possible expense and delay inherent in any second action by the insurance companies to recover from their insureds under *Travelers Indem. Co.* v. *Ingebretsen, supra,* 38 Cal.App.3d 858, which required landowners compensated for their losses by the government to repay their insurance companies the amounts previously paid out under their insurance policies.

Our decision with regard to plaintiffs' recovery in inverse condemnation makes it unnecessary for us to discuss the propriety of the judgment notwithstanding the verdict and of the new trial order on the issue of the dangerous condition of public property. (See *Agricultural Labor Relations Bd.* v. *Laflin & Laflin* (1979) 89 Cal.App.3d 651, 662, fn. 11 [152 Cal.Rptr. 800].) The evidence on both issues was the same. The damages likewise

were identical. Our holding on the inverse condemnation issue renders moot the appeal and cross-appeal on the other cause of action.

Defendants next contend that the trial court erred in directing a verdict for plaintiffs on the issue of the amount of damages. Defendants offered no evidence on damages, relying instead upon cross-examination of plaintiffs' expert witness and of the homeowners to convince the jury that plaintiffs' damages were less than requested. The trial court, after granting plaintiffs' motion for a directed verdict, dismissed the jury without submitting the matter to them at all.

A directed verdict is proper only when, after disregarding conflicting evidence and giving the opposing party's evidence every legitimate inference which may be drawn therefrom, there remains no evidence of sufficient substantiality to support a verdict in favor of the opposing party. (*Paulfrey* v. *Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 196 [197 Cal.Rptr. 501].) Unless it can be said as a matter of law that no other reasonable conclusion is legally deducible from the evidence and that any other holding would be so lacking in evidentiary support that a reviewing court would be compelled to reverse on appeal, or a trial court to set it aside, the trial court is not justified in taking the issue from the jury. (*Id.* at pp. 196-197.)

The trial court in the present case relied upon BAJI No. 11.80[2] in concluding that a damage award could be based only upon the opinions of the witnesses who testified thereto. This instruction appears to be based upon Evidence Code sections 810-813[3] and upon *People* ex rel. *D. of P.*

---

[2]BAJI No. 11.80 provides in part: "You must determine the fair market value of the subject property . . . only from the opinions of the witnesses who have been permitted by the court to express their opinion of such market value . . . . Thus, you may not find the market value of the subject property . . . to be either less than or more than that testified to by the witnesses who have been permitted to express their opinions on such matters."

[3]Evidence Code section 810 provides in part: "(a) Except where another rule is provided by statute, this article provides special rules of evidence applicable to any action in which the value of property is to be ascertained."

Evidence Code section 811 provides: "As used in this article, 'value of property' means market value of any of the following: (a) Real property or any interest therein. (b) Real property or any interest therein and tangible personal property valued as a unit."

Evidence Code section 813 provides in pertinent part: "(a) The value of property may be shown only by the opinions of any of the following: (1) Witnesses qualified to express such opinions. (2) The owner or the spouse of the owner of the property or property interest being valued. (3) An officer, regular employee, or partner designated by a corporation, partnership, or unincorporated association that is the owner of the property or property interest being valued, if the designee is knowledgeable as to the value of the property or property interest. . . . (c) For the purposes of subdivision (a), 'owner of the property or property interest being valued' includes, but is not limited to, the following persons: (1) A person entitled to possession of the property."

*Wks.* v. *McCullough* (1950) 100 Cal.App.2d 101 [223 P.2d 37], and *Redevelopment Agency* v. *Modell* (1960) 177 Cal.App.2d 321 [2 Cal.Rptr. 245]. The only type of evidence which can be used to establish value in eminent domain cases is the opinion of qualified experts and the property owners. (Evid. Code, § 813, subd. (a); *People* ex rel. *Dept. Pub. Wks.* v. *Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332, 348 [153 Cal.Rptr. 895].)

A jury hearing a condemnation action may not disregard the evidence as to value and render a verdict which either exceeds or falls below the limits established by the testimony of the witnesses. (*Redevelopment Agency* v. *Modell, supra,* 177 Cal.App.2d at pp. 326-327; *People* ex rel. *D. of P. Wks.* v. *McCullough, supra,* 100 Cal.App.2d at p. 105.) ■ The trier of fact in an eminent domain action is not an appraiser, and does not make a determination of market value based on its opinion thereof. Instead it determines the market value of the property, based on the opinions of the valuation witnesses. (*South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 1000 [133 Cal.Rptr. 166].)

The cases cited by defendants to support their contention that the jury could arrive at a verdict at variance with the only evidence offered were not condemnation actions. They are therefore inapposite.

■ Defendants seek to distinguish inverse condemnation from direct condemnation in order to escape the special evidentiary rules applicable to eminent domain actions. However, it is well established that condemnation and inverse condemnation are merely different forms of the same limitation on governmental power. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 67 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208]; *Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663, fn. 1 [39 Cal.Rptr. 903, 394 P.2d 719]; *McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at p. 700.)

■ Defendants also seek to distinguish the application of the evidentiary rules to the different kinds of property, real and personal. Decisional law has established, however, that there is no basis for any distinction between kinds of property taken or damaged for public use. (*City of Oakland* v. *Oakland Raiders, supra,* 32 Cal.3d at pp. 64-65; *Baldwin Park Redevelopment Agency* v. *Irving* (1984) 156 Cal.App.3d 428, 435 [202 Cal.Rptr. 792]; *McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at p. 700.)

■ Defendants urge us to consider the legislative committee comment to Evidence Code section 811, which states: "Subdivision (b) of section 811

is amended to include personal property only when valued together with real property. The effect of this amendment is to limit the scope of the evidence of market value provisions to actions involving real property or real and personal property combined. See Section 810 (article provides rules applicable to action in which 'value of property' to be ascertained). Actions involving personal property alone are governed by general law, including the general rules of evidence prescribed in this code, although where appropriate the court may look to the special rules prescribed in this article."

Defendants argue that since the personal property losses as testified to by the owners were not valued in an indiscreet lump with the real property, the general rules of evidence should have governed rather than those applicable to eminent domain proceedings, and therefore the issue of damages should have gone to the jury. We think, however, that the legislative committee comment makes it clear that the general rules of evidence are to be applied only when an action for loss of personal property is brought separately from any action for real property damage. Here, although the personal property was evaluated separately from the land and fixtures, plaintiffs sued to recover for both species of property loss in the same action. We see no reason to treat the two types of property differently.

■ Based upon the foregoing we conclude that the trial court properly directed a verdict for damages upon plaintiffs' evidence. Any deviation from the evidence by the jury would have been improper.

■ Defendants contend that the trial court erred in awarding plaintiffs prejudgment interest at the market rate rather than at the legal rate set by the California Constitution, article XV, section 1 and Code of Civil Procedure section 685.010.[4] We disagree.

■ The purpose of an award of prejudgment interest is to provide constitutionally mandated just compensation to persons whose property has been taken or damaged by the government. (*Orme* v. *State of California* ex rel. *Dept. Water Resources* (1978) 83 Cal.App.3d 178, 186 [147 Cal.Rptr. 735].) The right to prejudgment interest accrues on the date of the taking

---

[4]California Constitution, article XV, section 1 provides in part: "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon the interest rates charged by federal agencies or economic indicators, or both. [¶] In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum."

Former Code of Civil Procedure section 685.010, effective January 1, 1983, provides in part: "(a) Interest accrues at the rate of 10 percent per annum on the amount of a judgment remaining unsatisfied."

or damaging. (*Ibid.; Holtz* v. *San Francisco Bay Area Rapid Transit Dist.* (1976) 17 Cal.3d 648, 657 [131 Cal.Rptr. 646, 552 P.2d 430].)

The legal rate of interest set by the California Constitution was 7 percent when the damages in the present case occurred and was raised by statute to 10 percent as of January 1983. (Code Civ. Proc., § 685.010.) Plaintiffs presented evidence that the average market rate of interest from the date of the property damage to the date of judgment was 12.25 percent.

Defendants argue that the California Constitution, statutes, and decisional law all provide for the award of interest only at the legal rate in inverse condemnation suits, as in any other civil action. However, the right to prejudgment interest in inverse condemnation derives from the Fifth Amendment of the United States Constitution prohibiting the taking of private property for public use without just compensation. The supremacy clause of the United States Constitution binds the courts of this state to require just compensation notwithstanding anything in the Constitution or law of this state to the contrary. (U.S. Const., art. VI, cl. 2.)

If a government pays compensation to a property owner before or at the time property is taken or damaged, no interest is due. (*Kirby Forest Indus., Inc.* v. *United States* (1984) 467 U.S. 1, 10 [81 L.Ed.2d 1, 11, 104 S.Ct. 2187].) But if disbursement of the award is delayed, as in the present case, the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the taking. (*Ibid.; United States* v. *Miller* (1943) 317 U.S. 369, 373 [87 L.Ed. 336, 342, 63 S.Ct. 276, 147 A.L.R. 55]; *Baldwin Park Redevelopment Agency* v. *Irving, supra,* 56 Cal.App.3d at p. 438.) Because "just compensation" is a concept rooted in the federal Constitution it cannot be abrogated by state law. The process of determining just compensation is purely a judicial function which cannot be circumscribed by the Legislature. When the state takes or damages private property it cannot through its legislative arm limit the price it will pay or the manner of its payment. (*Monongahela Navig'n Co.* v. *United States* (1893) 148 U.S. 312, 327 [37 L.Ed. 463, 468, 13 S.Ct. 622]; *Baldwin Park Redevelopment Agency* v. *Irving, supra,* 56 Cal.App.3d at p. 439.) We conclude that the award of prejudgment interest at the market rate was proper, and that the evidence supports the correctness of the computations. (*Redevelopment Agency of the City of Burbank* v. *Gilmore* (1985) 38 Cal.3d 790 [214 Cal.Rptr. 904, 700 P.2d 794].)

 We turn now to the issue of attorney fees. Pursuant to Code of Civil Procedure, section 1036,[5] plaintiffs requested, and the court ordered, that defendants reimburse plaintiffs for all costs of the suit, including attorney fees. The award of attorney fees was based largely upon the contingent fee agreement between plaintiffs and their counsel, which required plaintiffs to pay their attorneys 20 percent of "any and all sums actually recovered." Plaintiffs offered the novel theory that they will be obligated by this agreement to pay to their attorneys 20 percent of the gross amount awarded to them, which will include compensation for the damage suffered by their property due to the fire, prejudgment interest, and all costs of the suit, including court costs, expert witness fees *and attorney fees already figured as 20 percent of the award.* They contend that because these are all costs "actually incurred" by them they are entitled to full reimbursement from defendants under section 1036. The result, of course, is a compounding of the costs charged to defendants as reimbursement for plaintiffs' costs and attorney fees.

 It has been held that there is no constitutional requirement to award litigation costs in a condemnation proceeding, (*County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141, 148-149 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538]) and that the mandate of section 1036 (formerly Code Civ. Proc., § 1246.3) derives from the will of the Legislature. (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist.*, *supra*, 17 Cal.3d at p. 658.) Even were we to consider costs and attorney fees as a part of just compensation those sums would necessarily be limited to what was "reasonable."

While the constitutional requirement of just compensation can be interpreted to include the necessary costs incurred in validating one's right to such compensation, it cannot be interpreted as giving the property owner carte blanche authority to "run up the bill."

 The reasonableness of attorney fees is generally determined by consideration of, among other things, the number of hours spent on the case, reasonable hourly compensation for the attorney, the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the litigation precluded other employment by the attorney, and the

---

[5]Code of Civil Procedure section 1036 provides: "In any inverse condemnation proceeding brought for the taking of any interest in real property, the court rendering judgment for the plaintiff by awarding compensation for such taking, or the attorney representing the public entity who effects a settlement of such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will, in the opinion of the court or such attorney, reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding."

contingent nature of the fee award. (*Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Vella* v. *Hudgins* (1984) 151 Cal.App.3d 515, 521 [198 Cal.Rptr. 725].) The amount involved and the results obtained are also factors. (*Glendora Community Redevelopment Agency* v. *Demeter* (1984) 155 Cal.App.3d 465, 474-476 [202 Cal.Rptr. 389].) The contingent nature of the fee contract is only one element of evidence of the value of the attorney's services; it is not controlling. (*Vella* v. *Hudgins, supra,* 151 Cal.App.3d at p. 521.) A court is free to award reasonable attorney fees notwithstanding the contract for a contingent fee. (*Glendora Community Redevelopment Agency* v. *Demeter, supra,* 155 Cal.App.3d at pp. 472-473; *Vella* v. *Hudgins, supra,* at pp. 519-521.)

 In the present case, the trial court found that the attorney fees requested (20 percent of the gross award including costs and attorney fees) was "reasonable, if not low, . . . considering the total complexity of this case, the overall demonstrated ability of counsel, . . . the responsibility involved in managing and handling the number of plaintiffs herein together with the responsibility of seeking the recovery of such a magnitude of amount of the award." The court refused to allow evidence of the attorneys' usual hourly rates. It does not appear to have considered the actual amount in dollars of this huge fee (approximately $2.2 million), the actual number of hours worked by plaintiffs' attorneys, or what relationship the fee award bore to the number of hours worked. This was error.

 The starting point of every fee award must be a calculation of the attorney's services in terms of the time he has expended on the case. (*Serrano* v. *Priest, supra,* 20 Cal.3d at p. 48, fn. 23.) Anchoring the analysis of reasonableness to this concept is the only approach that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts. (*Ibid.*)

 While the percentage basis of the fee award in the present case (20 percent) may seem low by comparison to other typical contingent fee arrangements, the actual amount was quite high in absolute terms and in relationship to the hours worked. This in itself should have signalled to the court that the fee award was unreasonable.

In addition to the foregoing, we think that the method used to compound the fee was improper. In effect it amounts to a surcharge of 20 percent by plaintiffs' attorneys upon all elements of the gross award, which, as we have noted, already contained an award of attorney fees. We do not believe that the Legislature ever intended that section 1036 be used this way. Tacking a 20 percent surcharge onto the court costs, expert witness fees and

attorney fees presents a bonus payment to plaintiffs' attorneys. The argument that plaintiffs themselves have to pay this surcharge to their lawyers is not persuasive. As defendants point out, the fee agreements in question were entered into long before the theory of inverse condemnation was introduced into the case. Thus, the collection of costs and attorney fees under section 1036 may not then have been within anyone's contemplation. Be that as it may, the award of attorney fees as compounded by the trial court was excessive and improper. Defendants' remaining contentions do not merit discussion.

That portion of the judgment awarding plaintiffs' attorney fees is reversed. The matter is remanded to the trial court for redetermination of those fees in light of the views expressed herein. In all other respects the judgment is affirmed. Defendants to bear all costs of the appeal.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied August 28, 1985, and the petition of defendants and appellants for review by the Supreme Court was denied October 17, 1985. Lucas, J., did not participate therein.