Filed 3/28/13  Murphy v. City of Sierra Madre CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEANNA MURPHY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CITY OF SIERRA MADRE,<br><br>    Defendant and Respondent. | B241246<br><br>(Los Angeles County<br>Super. Ct. No. GC047726) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County.  Joseph DeVanon, Judge.  Affirmed.

Law Offices of Sanford L. Horn, Sanford L. Horn for Plaintiffs and Appellants.

Colantuono & Levin, Teresa Highsmith, Sandra Levin, Tiana J. Murillo for Defendant and Respondent.

_____

For many years, plaintiffs unknowingly paid the electricity bill on a city-owned parking lot. After discovering the error, they sued the city who owned the lot. We find that plaintiffs have failed to state a proper cause of action against the city and have not demonstrated how they can adequately amend their complaint to allege a viable cause of action. We therefore affirm the order sustaining the city's demurrer without leave to amend and the related judgment.

## BACKGROUND

Plaintiffs Deanna and Don Murphy's first amended complaint (FAC) alleges that they purchased real property in the City of Sierra Madre (the City, or defendant) in 1985. The FAC states that plaintiffs purchased the property from a party who originally purchased the property from the City pursuant to a Disposition Development Agreement. The sale of the property to plaintiffs was approved by the city council, which imposed terms and conditions for development of the property. According to the FAC, the sale was consummated by means of an escrow agreement which expressly and impliedly called for proration of certain costs and expenses, and "should have but failed to include an express provision for transfer of the utilities." When the City transferred utilities for the property, it incorrectly transferred an adjacent electrical meter that serviced a City-owned parking lot, resulting in plaintiffs being charged for the electricity used for the parking lot. Plaintiffs contend that the failure to properly transfer utilities was a breach of the "sales contract."

From 1985 until December 2010, around the time they discovered the error, plaintiffs paid for the parking lot's electricity. Plaintiffs allege that the City appropriated their money for the benefit of the City and the citizens of the community. Plaintiffs duly filed a verified claim against the City for damages, which was rejected by the City in May 2011. The FAC further alleges that the City authorized its employees to contract with the Edison Company (Edison) to furnish electricity to the City's property, including the parking lot, and that this authority did not require a contract in writing, the signature of the mayor, or the approval of the city council.

2

Seven causes of action were alleged in the FAC: (1) unjust enrichment, (2) money had and received, (3) common counts, (4) inverse condemnation, (5) conversion, (6) violation of plaintiffs' constitutional rights, and (7) refund.

The City filed a demurrer to the FAC in December 2011.[1] In January 2012, the trial court issued a tentative ruling, indicating that it was inclined to sustain the demurrer without leave to amend, but inviting plaintiffs to submit a brief discussing a theory of liability against a public entity based on facts similar to this case. Thereafter, plaintiffs submitted a supplemental brief, to which they attached a copy of the Disposition Development Agreement, which was entered into between the Sierra Madre Community Redevelopment Agency and another third party. Plaintiffs did not submit any written agreement to which they were a party.

On March 5, 2012, the trial court sustained the City's demurrer without leave to amend. Plaintiffs timely appealed from the related judgment.

## DISCUSSION

An appellate court reviews a ruling sustaining a demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We give the complaint a reasonable interpretation, treating the demurrer as admitting all material facts properly pleaded, but not assuming the truth of contentions, deductions or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) As such, we are not concerned with the difficulties a plaintiff may have in proving the claims made. (*Desai*, at p. 1115.)

## I. Tort Claims

Plaintiffs do not appeal from the order dismissing their common law tort claims. Presumably, this is because "there is no common law tort liability for public entities in

---

[1] The trial court previously sustained, with leave to amend, a demurrer to the original complaint.

California; such liability is wholly statutory." (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 688.)  Under the Government Claims Act, Government Code section 810 et seq., "[e]xcept as otherwise provided by statute . . . [¶] . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) Government Code section 815 "abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation." (Legis. Com. com., Deering's Ann. Gov. Code (2010 ed.) foll. § 815, p. 128.)

Plaintiffs have identified no statutory authority or other grounds upon which they may pursue their tort claims against the City.  As such, the trial court correctly sustained the City's demurrer as to these causes of action.

## II.  Inverse Condemnation

Plaintiffs do argue that the trial court improperly found they could not state a claim for inverse condemnation.  Plaintiffs' inverse condemnation claim is based on allegations that they paid thousands of dollars for utility services which they never received, while the City received thousands of dollars worth of utility services that benefited the public, without paying anything.  Plaintiffs contend that the fact they paid a third party—Edison—is irrelevant.

An inverse condemnation claim lies "when the state or other public entity improperly has taken private property for public use without following the requisite condemnation procedures—as when the state, in constructing a public project, occupies land that it has not taken by eminent domain, or when the state takes other action that effectively circumvents the constitutional requirement that just compensation be paid before private property is taken for public use." (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 377 (*Customer Co.*).)

Plaintiffs contend that the "private property" which was taken for public use was plaintiffs' money.  The first hurdle in an inverse condemnation action is that the property owner must establish that the public entity has taken or damaged his or her property.

4

(*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 939.)  A primary problem with plaintiffs' claim is that they do not allege that the defendant, the City, took their money.  Rather, the money was paid to a third party, Edison.  Absent any identified "taking" by the City, plaintiffs' pleadings fail to adequately allege the elements of an inverse condemnation claim.

Plaintiffs ask us to disregard this flaw and extend the doctrine of inverse condemnation to encompass the unusual facts presented by this case.  We cannot do so. Article I, section 19, of the California Constitution (section 19) provides:  "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Although on its surface, section 19 may read as if it provides a broad remedy, "section 19 never has been applied in a literal manner, without regard to the history or intent of the provision." (*Customer Co.*, *supra*, 10 Cal.4th at p. 378.)  The section may not "'be pressed to its grammatical extreme.'" (*Ibid.*)  "Neither the 'taken' nor the 'or damaged' language ever has been extended to apply outside the realm of eminent domain or public works to impose a Constitution-based liability, *unamenable to legislative regulation*, for property damage incidentally caused by the actions of public employees in the pursuit of their public duties." (*Ibid.*)  According to the FAC, plaintiffs were damaged by the City's failure to ensure that utilities were correctly transferred upon completion of the sale of the subject property to plaintiffs, and the City's failure caused plaintiffs to pay Edison for services that were not properly charged to them.  Finding that such activity is subject to an inverse condemnation claim would push section 19 to its "grammatical extreme," and extend the inverse condemnation doctrine far beyond its historical application.

Plaintiffs have not identified any cases presenting even vaguely similar facts in which an inverse condemnation claim was upheld.  One case cited by plaintiffs, *McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683, 697, found that "[t]he fundamental justification for inverse condemnation liability is that the public entity, acting in furtherance of public objectives, is taking a calculated risk that damage to private property may occur."  The court found that the defendant city took a

5

calculated risk by implementing an inadequate water main pipe replacement and maintenance plan, and that the plaintiff suffered water damage to its building and personal property as a result. (*Ibid.*) *Sutfin v. State of California* (1968) 261 Cal.App.2d 50, 52, involved the discharge of waters from a creek due to ongoing flood control works, which damaged plaintiffs' motor vehicles. In *Aetna Life & Casualty Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 865, 872, plaintiffs alleged that they suffered damages due to a fire caused by sparks from the defendant city's electrical power transmission lines. In *Aaron v. City of Los Angeles* (1974) 40 Cal.App.3d 471, 475, the issue was whether the defendant city, as the owner and operator of Los Angeles International Airport, was liable to owners of residential property which was negatively affected by the noise from jet aircraft taking off and landing at the airport. And *Pacific Bell Telephone Co. v. Southern California Edison Co.* (2012) 208 Cal.App.4th 1400, 1403, involved damage to telephone cables caused by a ground fault from the defendant's power line.

Plaintiffs do not explain how any of these cases support an inverse condemnation claim premised not upon a public entity's actions in taking or damaging property for public use, but instead upon the City's alleged failure to adequately ensure that a third party billed the correct customer for electricity use. At most, plaintiffs' claim is one for negligence, which, as explained above, is barred under the Government Claims Act.

## III. <u>Violation of Constitutional Rights and Refund</u>

Plaintiffs' claims for violation of constitutional rights and for refund appear to be premised on the same argument—that the City has taken property that belongs to plaintiffs, for which they are entitled to just compensation.

Plaintiffs briefly cite two cases in support of both of these causes of action. The first, *TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, found that the appellant adequately pleaded a cause of action for "tax refund" by alleging that it paid use taxes that were based on long distance service determined to be tax-exempt. (*Id.* at pp. 1361-1362, 1368.) The second was also a tax case, *City of Modesto v. National Med, Inc.* (2005) 128 Cal.App.4th 518. That case found that the respondent was

6

not obligated to pay a business tax that violated principles of due process and equal protection, and that the appellant could not retroactively impose an amended tax ordinance on the respondent. (*Id.* at p. 521.)

Unlike the parties in these cases, plaintiffs here do not allege that they paid a tax (or any money at all) to the City. Instead, their payments were to a third party, Edison. Plaintiffs fail to explain how these cases—which involved parties contesting or seeking refund of taxes paid directly to a public entity—apply to the instant case. We cannot develop plaintiffs' arguments for them. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived."]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.) Therefore, we find no grounds to reverse the trial court's decision sustaining the demurrer as to plaintiffs' constitutional violation and refund causes of action.

## IV. Contract Claims

Plaintiffs did not expressly allege a breach of contract claim in their FAC. Nevertheless, in their supplemental brief to the trial court, and on appeal, they argue that their action is based on contract, and that they can state proper causes of action for breach of contract and/or quasi-contract. Section 814 of the Government Code provides that the Government Claims Act does not affect "liability based on contract." (See also *Souza & McCue Constr. Co. v. Superior Court* (1962) 57 Cal.2d 508, 510 ["When the state makes a contract with an individual it is liable for a breach of its agreement in like manner as an individual, and the doctrine of governmental immunity does not apply."].)

Plaintiffs do not point to any express contractual requirement that would have obligated the City to transfer utility billing to the proper party. The only contract that plaintiffs have provided is the Disposition Development Agreement, which does not contain such an obligation. Plaintiffs' FAC alleges that the failure to properly transfer utilities was a breach of the "sales contract," but it does not explain what the "sales contract" is or who the parties to it are, and it does not state who breached the sales

7

contract.  Thus, plaintiffs' pleading of breach of contract is deficient.  (See *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830 [the elements of breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff"].)

On appeal, plaintiffs characterize their claim against the City for failure to transfer utilities as one in quasi-contract.  This claim fares no better.  "It is settled that 'a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the  need to protect and limit a public entity's contractual obligations.'" (*Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 109-110; *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830; *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 314.)

Since plaintiffs failed to state a viable cause of action based on contract, the demurrer was properly sustained.

## V.  <u>Amendment Is Not Warranted.</u>

If a plaintiff demonstrates there is a reasonable possibility that a defect in pleadings can be cured by amendment, it is an abuse of discretion for the trial court to deny leave to amend.  (*Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967.) "While such a showing can be made for the first time to the reviewing court [citation], it must be made."  (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

Plaintiffs here did not demonstrate, either in the trial court or on appeal, how they could amend their complaint to properly state a cause of action.  We therefore deny leave to amend.

8

## DISPOSITION

The order sustaining the demurrer without leave to amend and the judgment in favor of the City are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.